**UNITED STATES of America**

v.

**Harvey Keith SMITH, et al.**

**Crim. No. L–92–0061.**

United States District Court,
D. Maryland.

March 29, 1993.

Jeffrey S. Jacobovitz, Washington, DC, for defendant Smith.

Bill D. Burlison, Crofton, MD, for defendant Palmer.

Arcangelo M. Tuminelli, Baltimore, MD, for defendant Grimm.

Richard D. Bennett, U.S. Atty., and Dale P. Kelberman and Joseph H. Young, Jr., Asst. U.S. Attys., Baltimore, MD, for U.S.

REVISED MEMORANDUM & ORDER

LEGG, District Judge.

Presently before the Court is defendant

Smith's[1] motion for reconsideration of the Court's earlier denial of defendants' motion to dismiss counts 9 through 13 of the indictment (18 U.S.C. § 1957 money laundering counts).[2] For the reasons set forth below, the Court reaffirms its earlier ruling DENYING defendants' motion to dismiss counts 9–13.

The government charges the defendants as aiders and abettors in a complex scheme to defraud a number of lenders as well as Lagusa, Inc. (a Maryland corporation). The alleged scheme to defraud involves the preparation and submission of false financial statements and other false documents to various lenders in order to obtain millions of dollars in "loans". The government contends that the lenders' money was wired to Lagusa, Inc., from which defendant Palmer, the C.E.O. of Lagusa, wired the funds to Smith and Grimm in Florida.[3] The money, which totaled approximately $2.5 million, was then allegedly spent by Smith and Grimm in pursuit of a lavish lifestyle.

Counts one through eight of the indictment charge Smith, Grimm, and Palmer with eight separate counts of wire fraud, each of which involved a wire transfer from a lender to Lagusa, Inc. in execution of the defendants' scheme to defraud. Counts 9–13 of the indictment charge defendants Smith, Grimm, and Palmer with violations of 18 U.S.C. § 1957, which provides, in relevant part, "(a) [w]hoever, ... knowingly engages or attempts to engage in a monetary transaction in *criminally derived property* that ... is *derived from specified unlawful activity* shall be punished ..." (emphasis added). Counts 9–13 charge the defendants with monetary transactions in monies derived from wire fraud, namely five wire transfers by Palmer from Lagusa, Inc. to a trust account in Florida which was allegedly controlled by Smith and Grimm (the "Grimm–Gray Trust").

Defendants contend that counts 9–13 should be dismissed because § 1957 encompasses only transactions in proceeds of completed crime. Defendants assert that the crime of wire fraud was not complete at the time Palmer allegedly wired monies from Lagusa to the Grimm–Gray Trust because these transfers were the last step in the alleged wire fraud scheme. Thus, defendants contend, the monies wired from Lagusa were not "criminally derived property" because they were not "proceeds obtained from a criminal offense." *See* 18 U.S.C. § 1957(f)(2). Defendants also implicitly advance a double jeopardy argument with respect to the alleged overlap between the wire fraud and money laundering counts of the indictment.

■ Defendants are correct in their assertion that 18 U.S.C. § 1957 is "intended to separately punish a defendant for monetary transactions that follow in time the underlying specified unlawful activity that generated the criminally derived property in the first place." *U.S. v. Lovett*, 964 F.2d 1029, 1042 (10th Cir.1992). Thus, if the crime of wire fraud, which constitutes the underlying unlawful activity upon which count 9–13 are predicated, were incomplete at the time Palmer allegedly wired monies to the Grimm–Gray Trust, the Court would be duty bound to dismiss counts 9–13.

Defendants err, however, in contending that the crime of wire fraud was incomplete at the time of the alleged wire transfers to the Grimm–Gray Trust. Defendants fatally confuse completion of the wire fraud *scheme* with completion of the *crime* of wire fraud. The crime of wire fraud is complete when the defendants, on one occasion, cause interstate wires to be used in execution *or furtherance* of a scheme to defraud. *See* 18 U.S.C. § 1343. Thus, as the Tenth Circuit explained in *U.S. v. Hollis*, 971 F.2d 1441, 1451 n. 4 (10th Cir.1992), "[t]he crime [of mail or wire fraud] was complete when the [defendants] *devised* the scheme and used the mails

---

**1.** The Court will presume that defendants Palmer and Grimm have joined in the present motion.

**2.** Although the court refers to counts 9–13 as "money laundering" charges, 18 U.S.C. § 1957 punishes monetary transactions in criminally de-

rived property, rather than money laundering *per se.*

**3.** Palmer was allegedly bribed by Smith and Grimm to perform these acts.

[or wires] in furtherance thereof." [4] (emphasis in text).

■ In this case, defendants are charged with eight separate wire fraud offenses, each involving one wire transfer in execution of a scheme to defraud. Each crime was completed at the time of the alleged transfer, not, as the defendants claim, at the time the scheme was fully executed. Indeed, as the Tenth Circuit noted in *Hollis,* "it is axiomatic that success in obtaining the object of the scheme is not an element of mail [or wire] fraud." 971 F.2d at 1451 n. 4.[5] Thus, defendants are properly charged with money laundering because each wire transfer from Lagusa to the Grimm–Gray trust followed in time an alleged completed crime of wire fraud, namely a transfer from a lender to Lagusa in execution of the alleged scheme.[6]

The cases cited by the defendants in support of their contentions are inapposite. In *U.S. v. Johnson,* 971 F.2d 562 (10th Cir. 1992), the defendant devised a fraudulent "peso scheme" in which his victims wired funds *directly* from their bank accounts to his. The defendant then wired monies from his account to those of his victims. The court found that the transfers from the victims to the defendant could not constitute § 1957 violations because the underlying crime of wire fraud, on which the § 1957 charges were predicated, requires one use of the wires in execution of the scheme to defraud. The court reasoned that the wire fraud crimes were not complete until the victims had wired their money into Johnson's account. 971 F.2d at 569.

The *Johnson* court emphasized, however, that, if the defendant "had first obtained the funds and then deposited them himself, [the] latter transaction would clearly have violated § 1957." [7] *Id.* The court also found that the defendant was properly charged with § 1957 crimes with respect to the wire transfers to his victims, because these occurred subsequent to completed crimes of wire fraud (namely, the initial wire transfers from the victims to the defendant). *Id.* at 570. Similarly, in *Lovett,* the court upheld § 1957 convictions based on the defendant merely "depositing ... fraudulently obtained funds" in a bank account.[8] 964 F.2d at 1041. Because Smith, Grimm, and Palmer are charged in counts 9–13 with monetary transactions which followed completed crimes of wire fraud, neither *Johnson* nor *Lovett* offers support for defendants' contention that counts 9–13 must be dismissed.

Moreover, in *Hollis,* a Tenth Circuit case decided after both *Johnson* and *Lovett,* the court rejected an argument virtually identical to that presently advanced by defendants. The Hollises were charged with mail fraud and § 1957 offenses in connection with a scheme to defraud an insurance company by

---

**4.** The elements of wire fraud and mail fraud are identical, except for the mode of communication used in furtherance of the scheme.

**5.** Indeed, were defendants' theory to be accepted as true, it would be impossible to convict anyone of multiple acts of wire fraud because the fraud would not be "complete" until the scheme to defraud was fully executed. It would also be impossible to convict a defendant of wire fraud if a scheme did not succeed.

**6.** To the extent that defendants contend that the crime of wire fraud was not complete until Lagusa was victimized (i.e., until the money was transferred from Lagusa to the Grimm–Gray account), because the indictment states that Lagusa was a victim, defendants are also in error. Defendants may properly be convicted of wire fraud if the trial proof "only support[s] a significantly narrower ... though included, fraudulent scheme." *U.S. v. Sutera,* 933 F.2d 641, 645 (8th Cir.1991). *See also U.S. v. Leichtnam,* 948 F.2d 370, 376–77 (7th Cir.1991) (conviction based on trial proof of fraud involving one victim valid even if indictment charged defendants of defrauding two victims because "it is still a criminal offense and one that the grand jury clearly set out in its indictment.").

**7.** Because Palmer, an alleged aider and abetter of Smith and Grimm, exercised control over the monies at Lagusa, the monies were allegedly in Smith's and Grimm's constructive possession while at Lagusa. Thus, for purposes of § 1957, Smith and Grimm "obtained" the monies while the monies were at Lagusa.

**8.** The Court is mindful that many completed wire and mail fraud offenses will be followed by "monetary transactions in criminally derived property", and that it may appear inequitable to punish a bank deposit of "criminally derived proceeds" as an independent criminal offense. Congress, however, clearly drafted § 1957 in order to separately punish such transactions, and the Court is bound by the language of the statute.

filing false insurance claims. 971 F.2d at 1446. The mail fraud counts of the indictment were based on checks the Hollises caused to be mailed to them by their insurance company in execution of their scheme to defraud. The § 1957 counts were based on the Hollises' endorsement and deposit of the insurance checks in their bank account. *Id.* at 1446–47.

The Hollises argued that the § 1957 counts of the indictment should have been dismissed because their scheme to defraud "encompassed depositing the checks in order to obtain the insurance money." *Id.* at 1451 n. 4. The court summarily rejected this contention, reasoning that the deposit of the money involved "funds derived from the fraudulent scheme [and] constituted no part of the alleged mail fraud offense," which was "complete when the Hollises *devised* the scheme and used the mails in furtherance thereof." *Id.* (emphasis in text).[9]

Thus, because the Court finds that counts 9–13 properly charge the defendants with violations of 18 U.S.C. § 1957, the Court DENIES the defendants' renewed motion to dismiss counts 9–13 of the indictment.

IT IS SO ORDERED.

---

9. Significantly, in *Johnson,* the Tenth Circuit found that wire transfers from Johnson to his victims (which followed completed wire fraud offenses) constituted § 1957 offenses even though the transfers were part of Johnson's overall "scheme to defraud" (the peso scheme). 971 F.2d at 570. Thus, as the Court noted *infra,* it is unnecessary for the defendants' fraudulent scheme to be complete at the time of the alleged § 1957 offenses, as long as the § 1957 transfers occur subsequent to completed wire fraud offenses.