**UNITED STATES of America,**

v.

**Kinley W. HOWARD, Defendant.**

**No. CR. 02–0079 (RBW).**

United States District Court,
District of Columbia.

Aug. 28, 2002.

---

See also 245 F.Supp.2d 24.

Harvey Joseph Volzer, Shaughnessy, Volzer & Gagner, Washington, DC, for Kinley W. Howard.

Judith L. Kozlowski, U.S. Attorney's Office, Washington, DC, for U.S.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on the defendant's motion to dismiss counts four and five of the indictment. The issue presented is whether the government has properly alleged an independent transaction separate from the offenses of wire and mail fraud sufficient to support a claim of money laundering pursuant to 18 U.S.C. § 1957 against the defendant. For the reasons set forth below, the Court answers this question in the affirmative.

I. *Summary of Facts:*

The following are the facts alleged by the government in the indictment: Mildred Powell died intestate on July 15, 1996. Indictment ¶ 2, at 1. Sometime thereafter, the defendant, Kinley Howard,

sought to be appointed the administrator of the estate of Ms. Powell, who was his aunt. *Id.* ¶ 5, at 2. Although the defendant's initial petition to be appointed personal administrator of Ms. Powell's estate was rejected because he was not "a direct blood relative of his aunt[,]" *id.* ¶ 6, at 2, he successfully filed a second petition on December 30, 1996, with the Probate Division of the Superior Court of the District of Columbia seeking his appointment as co-personal representative of the estate along with his mother, Lillian Powell Howard. *Id.* ¶ 8, at 2–3. The defendant allegedly forged his mother's signature on the second petition, and also represented that his mother resided at a residence in Florida that belonged to defendant, although she actually resided in Tennessee. *Id.* ¶ 9, at 3.

Thereafter, between July 1996 and December 1997, the defendant allegedly engaged in a series of transactions wherein he transferred funds, via electronic means and through use of the mails, to accounts he established for the deposit of the estate funds in Florida.[1] Specifically, between January and July 1997, the defendant transferred approximately $126,582.18 from Ms. Powell's bank accounts located in Washington D.C. and Georgia into the Florida accounts that he had established. *Id.* ¶ 15, at 4. In addition, beginning in January 1997 and continuing through April 1997, the defendant mailed letters to each of the banks where Ms. Powell had deposited her funds and, stating that he was the personal representative of Ms. Powell's estate, requested that the banks close any accounts in Ms. Powell's name and transfer the funds from those accounts into one of the two Florida bank accounts he had

established. *Id.* ¶¶ 16–17, at 5. The government also alleges that at some point the defendant transferred funds from Ms. Powell's Federal Employees Group Life Insurance program and Liberty Life Insurance policy to the Florida accounts. *Id.* ¶ 19, at 5–6. In addition, shortly after Ms. Powell's death, the defendant removed savings bonds from her apartment and deposited these bonds into the two Florida bank accounts he had established. *Id.* ¶ 22, at 6.

After his mother's death in March 1997, the defendant continued to transfer Ms. Powell's assets into the accounts established by him, allegedly forging his mother's signature on documents necessary to complete the transactions. *Id.* ¶ 25, at 7. It was after his mother's death that defendant transferred over $94,000 in Ms. Powell's assets to the accounts he had established. In addition, the defendant thereafter transferred over $142,000 from the two Florida estate accounts into his own personal and business accounts, and in the process, continued to forge his mother's name. *Id.* ¶¶ 25–26, at 7.

The defendant even continued to withdraw funds from the Emerald Coast account after August 7, 1997, when Superior Court Judge Cheryl M. Long issued a written order suspending the defendant's fiduciary powers over Ms. Powell's estate. *Id.* ¶ 27, at 7. From July 1996 until December 1997, the defendant transferred a total of $81,268.62 in Ms. Powell's assets to the Emerald Coast bank account and a total of $106,008.35 in Ms. Powell's assets to the Florida First account. *Id.* ¶ 28, at 7. On June 16, 1998, Judge Long issued a second written order, completely removing the de-

1. It was on or about January 3, 1997, that the defendant opened an account at the Florida First Bank (now known as Regions Bank) in Panama City, Florida, in the name of The Estate of Mildred Powell. Indictment ¶ 13. Shortly thereafter, on February 19, 1997, the

defendant opened the Emerald Coast Bank Account in Panama City, Florida also in the name of The Estate of Mildred Powell. *Id.* ¶ 14, at 4. The defendant allegedly forged his mother's name on both sets of bank application documents. *Id.* ¶¶ 13–14, at 4.

fendant as personal representative of Ms. Powell's estate and entered a civil judgment against him in the amount of $207,589.99. *Id.* ¶ 29, at 7.

In a five count indictment, the government charged the defendant with two counts of mail fraud (counts one and two); one count of wire fraud (count three); and two counts of engaging in monetary transactions in property derived from unlawful activity ("money laundering") (counts four and five). The mail fraud counts are derived from the defendant's letters, written on February 26, 1997 and March 26, 1997, to Riggs Bank and Paine Webber, respectively, closing the accounts of Mildred Powell. *Id.* ¶ 30, at 8. The wire fraud count alleges that on or about January 15, 1997, the defendant sent a letter from his office in Florida to Crestar Bank in Washington D.C. requesting the wire transfer of Ms. Powell's funds to the Florida First bank, and causing $61,572.02 to be wired from Crestar to the Florida First bank on January 23, 1997. *Id.* ¶ 4, at 9. On March 26, 1997, the defendant again sent a letter to Crestar requesting a further transfer of Ms. Powell's account's assets. Thereafter, on or about April 9, 1997, the defendant caused a second wire transfer to be made in the amount of $12,859.98 from Crestar Bank to the Florida First Bank. *Id.* ¶ 6, at 9.

Count Four, although incorporating the first twenty-eight paragraphs of the complaint, specifically asserts that on or about April 9, 1997, the defendant caused $12,859.98 to be transferred from Crestar to the First Florida bank, "that is wire fraud, in violation of Title 18, United States Code, Section 1343." *Id.* ¶ 2, at 10. Count Five, which again incorporates the first twenty-eight paragraphs of the complaint, specifically charges that on or about February 26, 1997, the defendant caused the mailing of a cashier's check in the amount of $29,903.43 from Riggs Bank to himself in Florida, "that is, mail fraud in violation of Title 18, United States Code Section 1341." *Id.* ¶ 2, at 11.

In his motion to dismiss counts four and five of the indictment, the defendant argues that he can not lawfully be convicted of money laundering in violation of 18 U.S.C. § 1957 "where there is no proof of an independent criminal transaction separate from the underlying offense[,]" Def.'s Mot. at 1–2, and that the indictment is flawed in this regard.

## II. *Analysis:*

■ To establish money laundering pursuant to 18 U.S.C. § 1957,[2] the government must establish that the defendant "derived property from a specified unlawful activity and that he engaged in a monetary transaction involving that property." *United States v. Seward,* 272 F.3d 831, 836 (7th Cir.2001) (citing 18 U.S.C. § 1957). Thus, the government must establish:

"(1) knowledge, (2) the existence of proceeds derived from a specified unlawful activity, (3) a financial transaction and (4) intent."[3] Daniel H. April & Angelo M.

**2.** Section 1957 and its counterpart, section 1956, comprise the Money Laundering Control Act of 1986, which created criminal liability for any "individual who conducts a monetary transaction knowing that the funds involved were derived from unlawful activity." Daniel H. April & Angelo M. Grasso, *Money Laundering,* 38 Am.Crim. L.Rev. 1051, 1052 (2001). Section 1957 "covers transactions involving property exceeding $10,000 derived from the specified unlawful activities." *Id.* at 1054.

**3.** Although section 1956 requires the government to establish one of four alternative forms of intent, "[s]ection 1957, by contrast only requires knowledge that a transaction is occurring and that the transaction involves criminally derived property; it requires no intent or design to conceal." April, *supra* note 3, at 1069. This memorandum will not

Grasso, *Money Laundering*, 38 Am.Crim. L.Rev. 1051, 1059 (2001).

Knowledge is a "requisite element for all of the crimes established by the Money Laundering Control Act, [although] the exact type of knowledge required varies with the specific offense." *Id.* Regarding section 1957, the government must demonstrate that the defendant " 'knowingly engages or attempts to engage in a monetary transaction in criminally derived property.' " *Id.* The government must also establish that the defendant "kn[ew] that the proceeds were derived from some form of criminal conduct but not the specific criminal activity involved. This level of knowledge can be met without the defendant having designed the transaction." *Id.*

 Second, the government must establish the existence of proceeds[4] derived from a specified unlawful activity. *Id.* Although the money laundering statute requires the government to establish that the defendant derived property from "a specified unlawful activity,"[5] the defendant does not have to be *charged* with the specified unlawful activity. *McIntosh v. United States*, 2000 WL 1206564, at *3 (S.D.Ind. June 30, 2000) (holding that indictment charging defendant with money laundering was not defective for failure to state whether the "specified unlawful activity" amounted to bank fraud, mail fraud or wire fraud; "the government did not need to tie the funds used in the transaction identified in the money laundering charge to 'a specific predicate offense.' ") (citations omitted); *United States v. Bitzur*, Civ.A. No. 96–572, 1996 WL 665621, at *1, 3 (S.D.N.Y. Nov.18, 1996) (denying defendant's motion to dismiss the indictment that charged him with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) for failure to plead facts delineating the federal offense that established the specified unlawful activity; although the "government will have to show at trial that the proceeds were obtained 'with the intent to promote the carrying on of' a violation of § 2314, that showing is a matter of proof,

---

address the intent requirement further, as the defendant has not made a challenge regarding this element of the money laundering charges.

4. Courts have held that the defendant need not be in actual possession of the proceeds of the funds derived from the specified unlawful activity; constructive control of the funds is sufficient. *See, e.g., United States v. Prince*, 214 F.3d 740, 750 (6th Cir.2000) (holding that defendant's conviction for money laundering under section 1956 would not be disturbed where evidence showed defendant had "sufficient control over the funds wired" to third parties because the third parties had all reached prior agreements with the defendant to transfer the money as directed by the defendant); *United States v. Smith*, 44 F.3d 1259, 1266 (4th Cir.1995) (rejecting defendant's argument that he could not be convicted of money laundering pursuant to section 1957 because he neither "possessed nor controlled the funds ..."; defendant was "in constructive control of the entire scheme to

defraud, directing ... [others] in carrying it out, and he was therefore in constructive possession and control of the fraudulently procured funds at the time those funds were transferred in violation of § 1957.").

5. The term "specified unlawful activity" is defined in 18 U.S.C. § 1956 and includes:
(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31 ...
Section 1961(1) includes: "(B) any act which is indictable under any of the following provisions of title 18, United States Code: ... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ..." The government's pleadings "must provide notice of any specific acts or activity constituting an indictable offense under federal law. In practice however, courts have not required an overly stringent degree of particularity in the pleadings when defendants challenge the allegations of specific unlawful activity." April, *supra* note 3, at 1065.

not of the indictment's sufficiency."). Thus, as long as the indictment contains "a plain, concise and definite written statement of the essential facts constituting the offense charged[,]" Fed.R.Crim.P. 7(c)(1), it should not be dismissed for failure to plead in detail the facts establishing the specified unlawful activity underlying the money laundering charge. *Bitzur*, 1996 WL 665621, at *1.

■ Third, the government must establish that the defendant conducted a financial transaction with the criminally derived proceeds.[6] Regarding this element, the "transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize 'transaction[s] in proceeds, not the transaction[s] that create [ ] the proceeds.'" *Seward*, 272 F.3d at 836 (quoting *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir.1998)). *See also United States v. Christo*, 129 F.3d 578, 579–80 (11th Cir.1997) ("Money laundering is an offense to be punished separately from an underlying criminal offense[ ]" and the allegations supporting the money laundering activity must include a "monetary transaction that [is] separate from and in addition to the underlying criminal activity.") (citation omitted); *United States v. Johnson*, 971 F.2d 562, 569 (10th Cir.1992) (stating that recent cases suggest that section 1957 "would only apply to monetary transactions occurring *after* the completion of the underlying criminal activity.") (citations omitted) (emphasis added); *United States v. Butler*, 211 F.3d 826, 830 (4th Cir.2000) ("Put plainly, the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime.").

The defendant in this case argues that because there is no proof as set forth in the indictment of an independent criminal transaction separate from the underlying offenses of wire and mail fraud, the money laundering counts of the indictment must be dismissed.[7] Defendant relies upon *Johnson* for the proposition that the transaction supporting the money laundering scheme must be distinct from the transactions that establish the wire and mail fraud. In *Johnson*, the Tenth Circuit reversed in part and affirmed in part the defendant's convictions for money laundering. The defendant in *Johnson* had convinced investors that he could purchase Mexican pesos at a discounted rate and would then resell those pesos at their market value in American dollars. *Id.* at 565. As a result of these representations, individuals would wire-transfer funds from their bank accounts to the defendant's bank account; the defendant would then wire to the investors profits he obtained for them. *Id.* The evidence showed that the defendant used some of the money wired to him to purchase "various items, including a house, a car, and assorted cashier's checks." *Id.*

On appeal, the defendant argued that the evidence was insufficient to support his conviction on counts four through sixty-three of the indictment that were brought pursuant to 18 U.S.C. section 1957.[8] In

---

6. "Criminally derived proceeds" are proceeds " 'derived from an already completed offense, or a completed phase of an ongoing offense.' " *United States v. Butler*, 211 F.3d 826, 829 (4th Cir.2000) (quoting *United States v. Conley*, 37 F.3d 970, 980 (3d Cir.1994)) (other citations omitted).

7. Arguments akin to the one made by defendant here, albeit in the context of challenges to the statutory requirement of a predicate specified unlawful activity as double jeopardy, have consistently been rejected by courts. April, *supra*, at 1074. "Courts generally agree that money laundering and the 'specified unlawful activity' are separate offenses separately punishable." *Id.*

8. Counts four through thirty-one of the indictment charged the defendant with violations of section 1957 based on twenty-eight separate

reversing the defendant's convictions based upon the transactions alleged in counts four through thirty-one of the indictment, which were based on twenty-eight separate wire transfers of funds from investors to the defendant's account, the court held that these transactions "were not transactions in criminally derived property ..." *Id.* at 570. The Court noted that pursuant to section 1957, " 'criminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." *Id.* at 568. In explaining why the transfer of funds from the investors to the defendant's account did not violate section 1957, the court stated that this section

> appears to be drafted to proscribe certain transactions in proceeds that have already been obtained by an individual from an underlying criminal offense. The defendant did not have possession of the funds nor were they at his disposal until the investors transferred them to him. The defendant therefore cannot be said to have obtained the proceeds of the wire fraud until the funds were credited to his account.

*Id.* at 570.[9] *See also Christo,* 129 F.3d at 579 (reversing defendant's conviction for money laundering where "the withdrawal of funds charged as money laundering was one and the same as the underlying crimi-nal activity of bank fraud and misapplication of bank funds."); *United States v. McGahee,* 257 F.3d 520, 528 (6th Cir.2001) (reversing defendant's money laundering conviction where the court found that "diverting the funds were part and parcel of the fraud and theft, and were not a separate act completed after the crime, as required under the money laundering statute.") (citations omitted).

However, if there are facts alleged in the indictment that separately support both the underlying crime and the money laundering, the indictment is legally adequate. *United States v. Kennedy,* 64 F.3d 1465, 1477 (10th Cir.1995). In *Kennedy,* the defendant was charged in a "109–count indictment for a massive scheme to defraud precious metals investors." *Id.* at 1468. In challenging his money laundering convictions,[10] the defendant argued that the transactions that were the basis of his convictions, which included his deposit of checks or foreign currency received from investors into his business account, did not. constitute money laundering because the transactions had occurred prior to him taking complete control of the funds from the predicate crime of mail fraud and therefore the government had failed to allege the "proceeds" element of the money laundering offense. *Id.* at 1477.

wire transfers of funds from investors to the defendant's account. *Johnson,* 971 F.2d at 567. Counts thirty-two through fifty-seven were based upon wire transfers of funds from the defendant's account to individual investors. *Id.* The final charges, contained in counts fifty-eight through sixty-three were based upon withdrawals by the defendant from his account in the form of cashier's checks. *Id.* "The funds in all of the transactions were alleged to be the proceeds of wire fraud." *Id.*

**9.** The Court in *Johnson* did, however, affirm the defendant's convictions on counts thirty-two through sixty-three, which alleged "viola-tions of § 1957 based on transfers of funds from the defendant's account to the investors in the peso scheme." 971 F.2d at 570. The Court held that the evidence presented regarding these counts "was sufficient for the jury to conclude that these funds were in fact derived from specified unlawful activity ... [as it showed] that over five and a half million dollars were deposited into the defendant's account ... [and] at least $2.4 million of this amount was from specific instances of wire fraud." *Id.*

**10.** The defendant had been indicted and convicted of money laundering in violation of 18 U.S.C. § 1956.

In upholding the defendant's conviction for money laundering, the *Kennedy* Court distinguished the *Johnson* case. The court held that *Johnson* was not on point because "the only wirings that were alleged to support the predicate wire fraud crimes in *Johnson* were the very transfers of funds identified in the money laundering transactions." *Id.* at 1478 (citing *Johnson,* 971 F.2d at 569). In contrast, the government in *Kennedy* had "alleged many *prior* mailings to prove the predicate mail fraud crimes, which occurred before the monetary transactions that formed the basis of [the defendant's] money laundering counts." *Id.* (emphasis in original). Therefore, the *Kennedy* Court said that unlike *Johnson,*

> "the illegal mailings in this case involved discrete, earlier mailings by [the defendant], rather than the receipt of funds by [the defendant] from his victims. It was the subsequent and distinct transfers of funds that were alleged as the separate transactions involving the 'proceeds of specified unlawful activity' which constituted the alleged money laundering under § 1956."

*Id. See also United States v. Smith,* 818 F.Supp. 132, 134 (D.Md.1993) (holding that defendants' conviction for money laundering pursuant to section 1957 would not be dismissed "because each wire transfer ... followed in time an alleged completed crime of wire fraud ..."), *aff'd* 44 F.3d 1259 (4th Cir.1995).

Similarly, in *Seward,* the defendant was charged with bank fraud, wire fraud, mail fraud and money laundering. *Id.* at 834. The defendant engaged in fraud by forging a number of bank signature cards that had belonged to a boarder who had been residing in the defendant's home before his death, and using the cards to transfer funds from the decedent's accounts to the defendant's own accounts. *Id.* In addition, the defendant in *Seward* forged a will, and mailed a copy of that will along with other legal pleadings from his home in Chicago to the lawful executor of the decedent's estate in Texas, which formed the basis of the mail fraud count. *Id.* at 835.

The facts supporting the money-laundering activity in *Seward* consisted of the following: defendant used the forged bank cards to open a joint account in his and the decedent's names; he called the bank, and impersonating the decedent, requested that a certificate of deposit be liquidated and transferred to the new joint account, which resulted in the bank's wire transfer of over $84,000,000; and, he wrote two checks on the new joint account, one for a payment on his home equity line of credit and the other for deposit into a friend's checking account. *Id.* at 836. "Each of these checks formed the basis for one of the money laundering counts." *Id.*

On appeal, Seward challenged the sufficiency of the evidence against him pertaining to the mail fraud and money laundering counts. *Id.* at 835. Regarding the money laundering counts, the defendant argued that the government failed to "allege that he engaged in any money-laundering transactions that were distinct from the bank, mail, and wire fraud scheme that the government alleged in the first three counts of the indictment." *Id.* at 836. The court rejected this argument. Specifically, regarding the checks, the court held:

> These transactions demonstrate both unlawful activity and distinct transactions in the criminally derived proceeds. When [the defendant] impersonated [the decedent] and defrauded [the] Bank into transferring [the decedent's] CD proceeds to the [joint] account, [the defendant] committed bank and wire fraud. That act of fraud was complete and [the defendant] had control over the proceeds of the fraud, once the money was placed in the [joint] account. The checks [the defendant] then wrote on

the account were, therefore, transactions in the proceeds of the bank fraud.

*Id.* at 837.

Additionally, Seward argued that the government could not rely on the two checks to support his conviction for money laundering because the government had included the checks in a list setting forth in the indictment the transactions that were done in furtherance of the mail, wire, and bank fraud schemes. *Id.* In rejecting this argument, the court held that "[a]lthough it is true that the defendant must have control of the proceeds of a fraudulent transaction before he can engage in money laundering with those proceeds, there is no requirement that the entire fraudulent scheme be complete before the defendant starts laundering the proceeds from early portions of the scheme." *Id.* (citation omitted). Therefore, the court held:

> there is no reason that the government could not have viewed the checks drawn from the [joint] account both as [the defendant's] attempt to launder the proceeds of the early, already completed phases of his fraudulent scheme, and as part of his ongoing effort to defraud [the decedent's] estate and to conceal his fraud.

*Id.* Therefore, the court concluded that the evidence was sufficient to sustain the defendant's conviction for money laundering. *Id.*

In this case, the government relies upon the transfer by the defendant on or about April 9, 1997, wherein he caused the wire transfer of $12,859.98 from Crestar Bank, and his mailing of a monetary instrument (a cashier's check) on February 26, 1997, from Riggs Bank to his Florida bank account to support the money laundering offenses charged in counts four and five of the indictment respectively. The wire fraud count also avers that the April 9, 1997 transfer was one of the events that constituted that offense, and one of the mail fraud counts also asserts that the February 26, 1997 letter was the gravamen of that count. Like *Kennedy*, these two events occurred after the predicate offenses of mail fraud and wire fraud had been committed. *See Kennedy*, 64 F.3d at 1478. This is so because the government specifically charges that the defendant allegedly engaged in a series of transactions wherein he transferred funds, via electronic means and through use of the mails, to accounts he established in Florida between July 1996 and December 1997. Indictment ¶ 6, at 2. Therefore, according to the indictment, the defendant had already possessed criminally derived proceeds prior to the money laundering activity in February, 1997.

Although the activity alleged in the indictment as constituting the money laundering activity is also alleged in the counts of wire and mail fraud, as long as there is "separate underlying unlawful activity that gave rise to the proceeds charged in the indictment," the defendant does not suffer prejudice for the indictment's failure to specify conduct separate from the underlying criminal activity. *United States v. Estacio*, 64 F.3d 477, 481 (9th Cir.1995). In *Estacio*, the defendant had engaged in an elaborate "check kiting scheme" where, under his direction "two [automobile] dealerships conducted the check kiting at issue ... by exchanging bad checks drawn on each dealership's respective bank ... totaling nearly $1,000,000 daily." *Id.* at 478. The defendant was charged with conspiracy to commit bank fraud, aiding and abetting in the commission of bank fraud, and thirteen separate incidents of money laundering in violation of 18 U.S.C. section 1956(a)(1)(A)(i) and aiding and abetting in money laundering. *Id.* at 479. The thirteen incidents of money laundering consisted of each separate deposit of insuffi-

ciently funded checks into the automobile dealerships' bank accounts. *Id.*

In affirming the defendant's money laundering convictions, the Court noted that it was not "clear from the indictment that the conduct alleged to have constituted laundering—receipt and deposit of bad checks—was separate from the conduct charged as the underlying criminal bank fraud activity." *Id.* at 481. But Estacio never challenged the indictment's sufficiency and did not argue that his money laundering convictions should be overturned as a result of the government's failure to describe separate unlawful activity that gave rise to the laundered proceeds in the indictment. *Id.* However, even if defendant had raised this challenge, the Court noted that the "deficiency in the indictment" did not prejudice the defendant in any way. In explaining its reasoning, the Court stated:

> The government's actual theory was that [the defendant] knew and participated in the bank fraud long before December, and that he actively participated in the December kites to perpetuate the earlier fraud. There was ample evidence of check kiting, or bank fraud, starting in June 1990 and continuing throughout the months preceding the December 1990 check kiting charged as money laundering. Accordingly, there existed separate, underlying unlawful activity that gave rise to the proceeds charged in the indictment and [the defendant] suffered no prejudice as a result of any irregularities in the charging document. *Id.*

Similarly in *Butler,* 211 F.3d at 828, the Fourth Circuit affirmed the defendant's convictions for money laundering. The defendant in *Butler* had been charged with one count of bankruptcy fraud in violation of 18 U.S.C. § 152 and five counts of money laundering in violation of 18 U.S.C. § 1957. *Id.* at 827. The evidence demon-strated that Butler, who had filed for bankruptcy, knowingly concealed from the bankruptcy trustee funds totaling $350,000, of which he laundered $150,000. *Id.* at 828. Regarding the money laundering activity, the evidence demonstrated that Butler received a check for $150,000, did not report this check to the bankruptcy trustee, sent the check to a third party, and had the third parties purchase five cashier's checks for him from these proceeds. *Id.* Count one of the indictment charged Butler with fraudulently concealing $350,000 from the bankruptcy estate. *Id.* The five money laundering counts were based upon the purchase of the five cashier's checks the defendant directed third parties to purchase on his behalf. *Id.*

On appeal, Butler argued that his convictions for money laundering could not "stand because they [were] based on the very same transactions that form[ed] the basis for his bankruptcy fraud conviction." *Id.* at 827. Specifically, defense counsel argued that the government had not presented "any act of asset concealment constituting bankruptcy fraud had occurred aside from the five transactions also alleged to be money laundering." *Id.* at 830.

In rejecting this argument, the *Butler* Court noted that the government, in its argument to the jury, had clearly described activities of the defendant, prior to the purchase of the five cashier's checks, that constituted the bankruptcy fraud. Thus, the Court held that the government had provided the jury "with sufficient evidence to support the conclusion that, at the time Butler ordered the purchase of each of the five cashier's checks, he had completed a phase of the bankruptcy fraud." *Id.* Therefore, "[t]he five transactions that form[ed] the basis for the money laundering counts were thus transactions in 'criminally derived property.'" *Id. See also Smith,* 44 F.3d at 1265 (holding that even

if indictment's wire fraud counts were incorporated by reference into the money laundering counts, the money laundering counts "would still pass muster[,]" because a sufficient portion of the wire fraud scheme had been completed and the fact that the wire scheme "as alleged ... included further transactions" did not detract from the fact that once received, the funds "constituted proceeds derived from an unlawful activity for purposes of a money laundering offense under 18 U.S.C. § 1957.").

■ As in *Estacio* and *Butler,* the government here has alleged unlawful activity that preceded the activity that constituted the defendant's money laundering. The wire fraud charge contains alleged activities beginning in January 1997 that constitute the wire fraud violation. The April 9, 1997 wire transfer is an additional act that was part of the purported ongoing scheme to defraud the Superior Court and Mildred Powell's heirs, and which constitutes the money laundering offense charged in count four. Similarly, in count five, the defendant's act of mailing a cashier's check on February 26, 1997, which the government claims constitutes money laundering, is also asserted as one of two mailings that form the basis for one of the two counts of mail fraud. Although it appears that, because the February mailing was the first act that established the mail fraud, the defendant had not completed an act of mail fraud until that mailing was made, that reality is of no moment as to whether the act also amount to money laundering. For one thing, the underlying criminal conduct from which the laundered funds were derived need not have been a completed offense when the money laundering occurred. *Seward,* 272 F.3d at 837. All the government needs to establish is that the

defendant had possession or control of the funds that were laundered. *Id.* Moreover, both of the money laundering counts incorporate the allegations contained in the first twenty-eight paragraphs of the indictment. And, "if one count incorporates paragraphs from other counts, the incorporated paragraphs too may be considered in determining whether a count properly charges an offense." *Smith,* 44 F.3d at 1265 (citing Fed.R.Crim.P. 7(c)(1)).[11]

The defendant in this case appears to argue that because the transactions constituting the wire and mail fraud are realleged as constituting the money laundering counts, that there is no separate underlying activity alleged in the indictment to sustain the money laundering counts. The defendant in *Seward* similarly argued that the indictment against him demonstrated "that under the government's own conception of the case, the two checks were a part of [his] fraud scheme [and] therefore ... those same transactions could not also be transactions in the proceeds of the schemes." 272 F.3d at 837. The *Seward* Court rejected that argument, finding that "money laundering can be critical element in a complex fraud scheme because it helps keep the scheme afloat and helps disguise the source of the fraud proceeds." *Id.* (citation omitted). Therefore, the Court concluded,

there is no reason that the government could not have viewed the checks drawn from the [business] account both as Seward's attempt to launder the proceeds of the early, already completed phases of his fraudulent scheme, and as part of his ongoing effort to defraud [the decedent's] estate and to conceal his fraud.

*Id.*

■ The same result must be reached in this case. There is no reason why the

---

11. Because in this case, the money laundering counts do not incorporate the wire and mail fraud counts, "the wire fraud counts should

not be considered part of any money laundering count when reviewing its adequacy." *Smith,* 44 F.3d at 1265.

government can not view the activity charged as money laundering as the defendant's "attempt to launder the proceeds of the early, already completed phases of his fraudulent scheme and as part of his ongoing effort to defraud [the decedent's] estate and to conceal his fraud." *Id.* In any event, the incorporated paragraphs of the indictment detail alleged facts that the defendant, beginning in January 1997, fraudulently transferred his deceased aunt's funds to accounts he had under his control as the co-representative of his aunt's estate. There being "no requirement that the entire fraudulent scheme be complete before the defendant starts laundering the proceeds from early portions of the scheme[,]" the defendant can properly be charged with money laundering for the earlier actions that helped comprise his fraudulent scheme.[12] *Id.* And, even if details about this underlying unlawful conduct were not set forth in the indictment, this would not be grounds for dismissal of the indictment because whether the criminally derived proceeds "existed before the laundering transaction is a question of proof, not a question of the adequacy of the indictment." *Id.* Thus, defendant's motion to dismiss must be denied at this time.[13]

III. *Conclusion*

The defendant's motion to dismiss counts four and five of the indictment should be denied. The indictment contains sufficient allegations establishing specific unlawful activity that gave rise to the proceeds that defendant allegedly laundered.

Therefore, these counts of the indictment should not be dismissed.[14]

---

12. The indictment alleges that "between January and July 1997, the defendant ... transferred approximately $126,582.18 in funds from ... four bank accounts ... which were part of the estate of Mildred Powell into the Florida First estate account and the Emerald estate account ..." Indictment ¶ 15, at 4.

13. If defendant chooses to re-new his motion at the close of the government's case, he should do so based upon a challenge to the sufficiency of the evidence presented in support of the government's position that the laundered proceeds were derived from illegal activity.

14. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.