**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE JASON SCOTT BROWN,
*Debtor*,

KENNETH BROWN,
*Appellant*,

v.

CHRISTOPHER BARCLAY,
*Appellee.*

No. 18-60029

BAP No.
17-1068

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kurtz, Spraker, and Alston, Bankruptcy Judges, Presiding

Argued and Submitted November 7, 2019
Pasadena, California

Filed March 23, 2020

Before: Mary M. Schroeder, Michelle T. Friedland,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Schroeder

## SUMMARY[*]

### Bankruptcy

The panel affirmed the bankruptcy court and the Bankruptcy Appellate Panel's ruling in favor of a Chapter 7 trustee who contended that funds fraudulently transferred by the debtor remained property of the bankruptcy estate upon conversion from Chapter 13 to Chapter 7.

Under 11 U.S.C. § 348(f)(1)(A), upon conversion from Chapter 13 to Chapter 7, the converted estate consists of the assets that remain in the possession or control of the debtor at the time of conversion. Here, the debtor made unauthorized and fraudulent transfers of funds during the Chapter 13 proceeding. The panel held that, following conversion for cause to Chapter 7, upon the bankruptcy court's finding of the debtor's bad faith in making the transfers, the transferred funds remained property of the Chapter 7 estate, which meant that the Chapter 7 trustee had authority to recover them. Interpreting § 348 in light of the structure of the Bankruptcy Code as a whole, including its object and policy, the panel held that, because the debtor transferred the funds with the fraudulent purpose of avoiding payments to creditors, the funds remained within his constructive possession or control, and hence should be considered part of the converted estate.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael G. Doan (argued), Doan Law Firm, Oceanside, California, for Appellant.

Yosina M. Lissebeck (argued), Lissebeck Law, San Diego, California, for Appellee.

**OPINION**

SCHROEDER, Circuit Judge:

**OVERVIEW**

When a bankruptcy proceeding is converted from a proceeding under Chapter 13 to a proceeding under Chapter 7, the contents of the Chapter 7 estate should be easily ascertainable. Congress therefore enacted 11 U.S.C. § 348(f)(1)(A) to define the converted estate. It provides that the converted estate consists of the assets in the Chapter 13 estate that remain in the possession or control of the debtor at the time of conversion.[1]

The problem in this case began when the debtor made unauthorized and fraudulent transfers of funds during the Chapter 13 proceeding. After the Bankruptcy Court converted the proceedings to Chapter 7 in response, the debtor argued that the transferred funds were no longer in the

---

[1] Section 348(f)(1)(A) provides "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

estate. The Bankruptcy Court and the Bankruptcy Appellate Panel ("BAP") disagreed, holding that, under the circumstances, the transferred funds should remain property of the Chapter 7 estate, which would mean the Chapter 7 trustee had authority to recover them. Those courts, however, came up with three different rationales for that result. We agree that the funds should remain property of the estate, but we must endeavor to harmonize that result with the language of § 348(f)(1) and the limited case law interpreting it.

The case arises out of a modest family inheritance. The debtor, Jason Brown, has three brothers, including Appellant Kenneth Brown. When their father died on July 20, 2012, he left his estate to his four sons. In the state court probate proceeding in August 2013, each of the brothers abandoned their interests in the estate to Jason.

Jason then filed his Chapter 13 bankruptcy petition on December 13, 2013 and filed his schedules and Chapter 13 plan on December 21. He scheduled an anticipated inheritance of only $2,500. A few months after that, the state court distributed the net proceeds of the estate to Jason, an amount totaling $55,487.97. Jason almost immediately, and without the approval of the Chapter 13 trustee, transferred $12,372 to each of his brothers.

Upon learning of the unauthorized transfers, the Chapter 13 trustee, as a sanction, sought conversion pursuant to 11 U.S.C. § 1307(c). That section provides that upon request of the trustee, the Bankruptcy Court may convert a case to Chapter 7 for cause. The trustee alleged Jason had abused the bankruptcy system by first failing to disclose the full amount of his anticipated inheritance and then by transferring most of that inheritance to his brothers who no longer had any claim

to it. At the hearing on the Chapter 13 trustee's motion, Jason offered no justification for either the lack of disclosure or the transfers. Jason also acknowledged that he could not account for any of the money, including the funds that he had retained after transferring equal shares to his brothers. The Bankruptcy Court ordered the conversion to Chapter 7 for cause, and, when Jason moved for reconsideration, made an express finding that Jason's conduct had been in bad faith. The Bankruptcy Court explained that given the uncontradicted evidence of concealment by Jason, and his failure to provide an adequate explanation for his actions, there was ample support for a bad faith finding without holding an additional hearing. It concluded that the transfers were made to avoid payments to creditors.

The Bankruptcy Court then appointed Appellee Christopher Barclay as the Chapter 7 trustee. The trustee moved to recover the funds from all four brothers, including Appellant Kenneth and debtor Jason. Appellant's position was that the funds transferred to him were not part of the bankruptcy estate after the conversion because they were no longer in the possession or control of the debtor, as required by § 348(f)(1)(A). The Bankruptcy Court disagreed, and offered two different reasons why the funds remained part of the bankruptcy estate. First, the Bankruptcy Court explained that because the transfers were not for ordinary living expenses permitted by statute, but were made in bad faith to avoid creditors, they should be regarded as property of the converted estate. Alternatively, the Bankruptcy Court reasoned that because Jason's estate had a claim to recover the funds from the brothers, the funds could be said to have remained within his possession or control within the meaning of § 348 (f)(1)(A).

The BAP majority agreed with the Bankruptcy Court's first rationale, holding that because the funds were not spent in good faith on ordinary living expenses, they remained part of the converted estate. Judge Spraker wrote a separate concurring opinion. In his view, a claim to avoid the transfer of funds accrued to the Chapter 13 trustee before conversion, and that claim was unaffected by § 348(f)(1)(A).

In his appeal to this court, Appellant does not dispute the finding of bad faith but contends only that funds transferred to him were no longer in the literal possession or control of his brother, the debtor Jason, at the time of conversion, and hence not recoverable as part of the Chapter 7 estate. The trustee argues, however, that the property defined by § 348 must include fraudulently transferred funds to prevent abuse of the system. This dispute thus concerns the interpretation of § 348(f)(1)(A), a provision that does not directly address the issue of fraudulent transfers. As in other contexts, we must interpret a problematic section of the Bankruptcy Code in light of the structure of the Code as a whole, including its object and policy. *See Hawkins v. Franchise Tax Bd.*, 769 F.3d 662, 666 (9th Cir. 2014) (citing *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).

## DISCUSSION

Section 348 comes into play when a bankruptcy proceeding is converted from Chapter 13 to Chapter 7. We therefore look first to the nature of each type of proceeding.

Chapter 13 bankruptcy is a voluntary proceeding that allows a debtor to retain control over some assets while the debtor repays creditors over a three-to-five-year period. In exchange for retaining control of some assets, the property

accumulated during the repayment period becomes part of the bankruptcy estate and is used to repay creditors. *See* 11 U.S.C. § 1306(a)(1) (including in the Chapter 13 estate "all property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12").

In contrast, Chapter 7 allows debtors to discharge their existing debts immediately without a long-term payment plan. But in exchange, the debtor must relinquish control of and liquidate all existing assets. The Chapter 7 trustee is to sell the property of the estate, 11 U.S.C. § 704(a)(1), and then distribute the proceeds to the debtor's creditors, 11 U.S.C. § 726. Unlike in Chapter 13 proceedings, wages or other assets acquired by the debtor post-petition are not property of the estate, and therefore creditors do not have access to them. *See Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015) ("Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions.").

An issue that arises is how to define the contents of the estate that is converted from Chapter 13 to Chapter 7. One option would be to apply Chapter 7's rule that all assets acquired after the filing of the initial petition are retained by the debtor and do not become part of the bankruptcy estate. This approach would bar creditors from obtaining assets that were acquired by the debtor after the Chapter 13 petition was filed. In essence, this approach would put the debtor where he would have been, had he filed in Chapter 7 initially. Applying Chapter 7's rule upon conversion would therefore allow the debtor to keep assets that were acquired after the initial voluntary Chapter 13 petition was filed.

Another approach would be to apply Chapter 13's rule that assets acquired after the petition is filed become part of the estate. Thus, assets acquired after the Chapter 13 petition was filed would, upon conversion to Chapter 7, become part of the converted estate. This approach would give a debtor's creditors, upon conversion to Chapter 7, access to all such assets. Such an approach would put the debtor in a worse position than if the petition had been filed in Chapter 7 initially.

Congress tried to resolve the issue in § 348(f)(1)(A), which effectively adopted the Chapter 7 approach, by defining the converted estate to exclude assets acquired after the initial filing. This provision limits the converted estate in two ways. First, to avoid penalizing the debtor who initially engaged in voluntary bankruptcy under Chapter 13, Congress restricted the assets of the converted estate to property "as of the date of filing of the [voluntary] petition." 11 U.S.C. § 348(f)(1)(A). This means that, after conversion to Chapter 7, creditors are barred from recovering property that was acquired by the debtor after filing the Chapter 13 petition. *See, e.g.*, *Harris*, 135 S. Ct. at 1837 (holding that wages acquired by the debtor after filing for Chapter 13 bankruptcy and not distributed at the time of conversion, are not property of the converted estate under section 348(f)(1)(A)).

Second, and of immediate concern here, Congress, in § 348(f)(1)(A), limited the property of the converted estate to include only property that "remains in the possession of or is under the control of the debtor on the date of conversion." This was necessary in order to take into account the debtor's ability to spend funds on ordinary living expenses during the Chapter 13 proceeding. *See* 11 U.S.C. §§ 1303, 1306(b); *In re Pisculli*, 426 B.R. 52, 66 (E.D.N.Y. 2010) ("[T]he rights

conferred by sections 1303 and 1306(b) . . . provide the Chapter 13 debtor with the implicit right to use property of the estate for ordinary and necessary living expenses, provided such use is not in bad faith."). This second limitation prevents creditors from seeking to recover funds that were lawfully spent during the Chapter 13 proceeding and therefore no longer property of the estate. *See* 140 Cong. Rec. H10752-01 at *H10771 (1994).

This second limitation on the property of the converted estate has given rise to problems for the bankruptcy courts, when, as here, there have been unlawful expenditures during Chapter 13. *See In re Salazar*, 465 B.R. 875, 878–79 (B.A.P. 9th Cir. 2010) ("Courts have struggled in applying § 348(f)(1)(A).") The primary issue that arises is whether creditors may go after funds that are no longer in the possession or control of the debtor, because they were transferred out of the Chapter 13 estate without proper authorization.

*Salazar* was the first BAP case to grapple with § 348(f)(1)(A). In *Salazar*, the issue was what to do with assets that, during the Chapter 13 proceeding, came in and then went out for appropriate, but unauthorized, expenses. The debtors had received a tax refund after they filed for Chapter 13 bankruptcy. *Id*. at 882. The debtors proceeded to spend those funds "in the normal course of living." *Id*. After conversion to Chapter 7, the trustee sought recovery of the tax refunds that were acquired by the debtors post-petition. The trustee argued that the tax refund should be included in the property of the converted estate, because in the trustee's view, the tax refunds should have been categorized as property of the Chapter 13 estate. *Id*. at 877. But the BAP reasoned that, because the debtor spent the tax refunds on

ordinary living expenses, those funds should be excluded
from the converted estate. *Id*. at 882. Other bankruptcy
courts have agreed that § 348(f)(1)(A) bars creditors from
recovering funds from the converted estate that were spent on
ordinary living expenses during Chapter 13, even if those
expenses were unauthorized. *See, e.g.*, *In re Laflamme*,
397 B.R. 194, 205–06 (Bankr. D.N.H. 2008).

Conversely, courts have generally allowed creditors to
recover funds where the debtor has fraudulently transferred
those funds out of the Chapter 13 estate to avoid creditors
without authorization. For example, in *Pisculli*, the debtor
transferred to his wife and brother-in-law funds obtained from
a truck sale that should have been used to repay the debtor's
creditors, and did so without notifying the Chapter 13 trustee.
426 B.R. at 57. The court reasoned that, because those
proceeds had not been spent on ordinary living expenses, they
should be included in the converted estate. *Id.* at 66. The
court explained that, where the debtor surreptitiously
transferred funds out of the estate during Chapter 13, "the
debtor should not be allowed to escape the consequence [of
that action]. . . simply because the proceeding has been
converted to a Chapter 7 case." *Id*. at 65.

Such a result is even more compelling where, as here,
conversion to Chapter 7 has been imposed as a sanction for
fraudulent transfers. In such cases, courts have observed that
a literal application of § 348(f)(1)(A) to treat assets
transferred in bad faith without authorization as outside the
estate could lead to an absurd result, one rewarding bad faith.
As the court in *Wyss v. Fobber* explained, exclusion of the
fraudulently transferred funds from the converted estate
would mean that "the very act which generally would form
the basis for the denial or revocation of discharge, i.e.,

disposition of property of the estate, would insulate the debtor from liability" in the Chapter 7 proceeding. 256 B.R. 268, 276 (Bankr. E.D. Tenn. 2000); *see also In re Grein*, 435 B.R. 695, 699 (Bankr. D. Colo. 2010) (including property in the converted estate, "in order to avoid an absurd result").

While the result that fraudulently transferred funds should be recoverable by creditors as part of the converted estate under section 348(f)(1)(A)—especially when conversion was imposed as a sanction for those fraudulent transfers—seems obvious, the text of the statute is much less so. Perhaps for this reason, in this case, the Bankruptcy Court and members of the BAP articulated three different theories to explain how to reach that result. The BAP majority applied the test from *Salazar* and concluded that because the funds were not spent in good faith on ordinary living expenses, they remained part of the converted estate. Separately concurring, Judge Spraker explained that, in his view, the funds were not part of the converted estate, but the right to recover those funds had accrued to the Chapter 13 trustee before conversion. He concluded that the right to recover was unaffected by conversion to Chapter 7. The Bankruptcy Court had taken a slightly different view, stating that because debtor Jason's estate had a claim against his brothers, that claim was part of the Chapter 13 estate and became property of the estate. Although they disagreed on the specific rationale, the BAP majority, Judge Spraker, and the Bankruptcy Court all agreed that the fraudulently transferred funds must be considered property of the estate after conversion to Chapter 7.

None of these rationales, however, directly address Appellant's main contention. That contention is that the definition of the post conversion estate in § 348(f)(1)(A), property that "remains in the possession of or is under the

control of the debtor," does not include funds transferred out of the estate, albeit fraudulently.  Although the BAP majority's approach, to include the fraudulent expenditures as part of the converted estate because they were not spent on ordinary living expenses, seems sensible, the statute does not say that.  It provides only that funds remaining within the possession or control of the debtor are part of the converted estate.  Appellant further argues that the BAP should have discussed the Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415 (2014).  There, the Court was considering a bankruptcy court's equitable powers under 11 U.S.C. § 105(a).  The Court held that a bankruptcy court cannot use such equitable powers where doing so would "contravene specific statutory provisions" exempting certain property from the reach of creditors.  *Siegel*, 571 U.S. at 421. Appellant argues that the Bankruptcy Court and BAP committed a similar error by using their equitable authority to override an express provision of the Bankruptcy Code. Appellant contends that the BAP majority did not even attempt to explain how its result could be reconciled with the text of § 348, and that they are in fact irreconcilable.

Appellant further contends that Judge Spraker's view is incompatible with the text of §348.  Judge Spraker's conclusion that the Chapter 13 trustee's claim to avoid the fraudulently transferred funds was unaffected by conversion, Appellant argues, would make § 348(f)(1)(A)'s separate definition of the converted estate superfluous.

The question we must answer here is whether the statutory provision, § 348(f)(1)(A), that defines property of the estate at the time of conversion, includes funds that were fraudulently transferred out of the voluntary estate in order to avoid creditors.  We do not agree with Appellant that the

express provision of the Code provides a clear answer with respect to the issue of fraudulent transfers. To interpret what we view as ambiguous text, we begin by looking to the structure, object, and policies of the Bankruptcy Code. *See Hawkins*, 769 F.3d at 666.

The Code reflects a firm policy of not rewarding fraud or bad-faith debtors—which it realizes in numerous provisions, including the structural relationship between Chapter 13 and Chapter 7. In both Chapter 13 and Chapter 7 proceedings, unauthorized transfers of estate property by the debtor can be recovered by the trustee. *See* 11 U.S.C. § 549(a). Under both, a delay of discharge may be obtained where a debtor fraudulently transfers funds. *See* 11 U.S.C. § 523(a)(2)(A). And the Code permits the bankruptcy court to order conversion to Chapter 7 when the debtor fraudulently transfers funds during a voluntary bankruptcy proceeding. *See* 11 U.S.C. § 1307(c). Appellant concedes that had this case remained in Chapter 13, the trustee could have recovered those funds. And if the case had been filed initially in Chapter 7, the trustee could have also recovered the funds.

There is thus no basis in the structure, policy, or purpose of the Bankruptcy Code for treating the fraudulent transfers as beyond the reach of the creditors merely because the estate was converted. The only argument otherwise is that Congress used language that seemingly requires actual possession or control, despite the injustice of the result. For the reasons that follow, we disagree with that statutory interpretation.

To assist us in our interpretation of the text, we look to other situations in which courts examining statutes requiring possession have recognized that an interpretation requiring actual physical possession could lead to unfair or untoward

results. In such situations, which arise principally in criminal contexts, courts have adopted a broader interpretation of "possession." Examples are statutes penalizing the possession of contraband and statutes penalizing laundering of money that has been in the defendant's possession. Courts have utilized the concept of "constructive" control or possession, whereby an individual is deemed to possess items even when the individual does not actually have immediate physical possession of the item. *See, e.g.*, *United States v. Vasquez*, 654 F.3d 880, 885–86 (9th Cir. 2011).

The possession of a controlled substance is a crime under our drug laws. *See*, *e.g.*, 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally to . . . possess . . . a controlled substance"). When defendants charged with violating this and similar statutes have argued that actual physical possession of the contraband is required, courts have rejected the argument, explaining that a demonstration of constructive possession or control of the contraband is sufficient. *See, e.g.*, *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986) (observing that "[w]e have upheld many convictions [under § 841(a)(1)] under the theory of constructive possession"); *United States v. Ruiz*, 462 F.3d 1082, 1088 (9th Cir. 2006) ("[W]e have defined possession as having actual or constructive control.").

With respect to money laundering, the criminal statute penalizes the transfer of unlawfully obtained proceeds. 18 U.S.C. § 1957(f)(2) (defining "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense"). Courts have held that to show that a defendant "obtained" proceeds, there must be a demonstration of possession or control. *See United States v. Piervinazi*, 23 F.3d 670, 677 (2d Cir. 1994).

Defendants charged under this statute have argued that if a defendant merely directed a transfer of proceeds without ever placing the funds in the defendant's own account, that defendant "neither possessed nor controlled the[] funds" and therefore could not be the subject of the money laundering charges. *United States v. Smith*, 44 F.3d 1259, 1265–66 (4th Cir. 1995). But courts have concluded that constructive control of fraudulently obtained funds is sufficient and may be inferred where transfers are made pursuant to a scheme of fraud that the defendant participated in or directed. *See id.* at 1266; *United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000) (holding that the defendant "did not need to have physical possession of the money before it could be considered proceeds"); *United States v. Howard*, 271 F. Supp. 2d 79, 83 n.4 (D.D.C. 2002) (explaining that "the defendant need not be in actual possession of the proceeds of the funds derived from the specified unlawful activity; constructive control of the funds is sufficient")*.* Accordingly, proceeds from money laundering may be within the defendant's constructive control or possession, even though the funds were never placed in the defendant's account. *Smith*, 44 F.3d at 1266.

The situation in this case is parallel. The debtor Jason transferred the funds out of his actual possession to a close family member, in an effort to avoid payments to his creditors that would have otherwise been required under the Bankruptcy Code. In analogous criminal contexts, courts have consistently rejected efforts to evade the operation of the law by disguising ownership of fraudulently obtained funds or contraband. *See, e.g.*, *Henderson v. United States*, 135 S. Ct. 1780, 1785 (2015) (explaining that a defendant "cannot evade the strictures of [the statute] by arranging a sham

transfer that leaves him in effective control of" the contraband).  We apply the same approach here.

It is undisputed that the debtor Jason was trying to avoid the operation of the Bankruptcy Code when he transferred the funds to close relatives without first notifying either the Bankruptcy Court or the Chapter 13 trustee.  Had there been a dispute as to his intent, we believe that an unauthorized transfer would at least give rise to a rebuttable presumption that funds remained within the debtor's possession or control.  In this case, however, the Bankruptcy Court found, and it has never been disputed on appeal, that the debtor transferred the funds with the fraudulent purpose of avoiding payments to creditors.  The brothers may, for example, have intended to give the money back to the debtor Jason after the bankruptcy was over.  We therefore hold that those funds remained within his constructive possession or control, and hence should be considered property of the converted estate under § 348(f)(1)(A).

**AFFIRMED**.