**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JOHN FELIX
CASTLEMAN, Sr.; KIMBERLY
KAY CASTLEMAN,
    *Debtors,*

------------------------------

JOHN FELIX CASTLEMAN, Sr.;
KIMBERLY KAY CASTLEMAN,
    *Appellants,*

 v.

DENNIS LEE BURMAN, Chapter 7
Trustee,
    *Appellee.*

No. 22-35604

D.C. No.
2:21-cv-00829-
JHC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John H. Chun, District Judge, Presiding

Argued and Submitted May 9, 2023
Seattle, Washington

Filed July 28, 2023

Before:  Michael Daly Hawkins, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge Tallman.

## SUMMARY[*]

### Bankruptcy

Affirming the district court's order, which affirmed the
bankruptcy court's order, the panel held that post-petition,
pre-conversion increases in the equity of an asset belong to
the bankruptcy estate, rather than to debtors who, in good
faith, convert their Chapter 13 reorganization petition into a
Chapter 7 liquidation.

When debtors filed for bankruptcy, they listed their
home among their assets.  When they later converted to
Chapter 7, the home had risen in value.  Debtors argued that
the home's increased equity belonged to them and not the
bankruptcy estate under 11 U.S.C. § 348(f)(1)(A), which
provides that "property of the estate in the converted case
shall consist of property of the estate, as of the date of filing
of the petition, that remains in the possession of or is under
the control of the debtor on the date of conversion."

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

On de novo review, the panel held that the plain language of § 348(f)(1)(A), coupled with the Ninth Circuit's previous interpretation of 11 U.S.C. § 541(a), compelled the conclusion that any appreciation in the property value and corresponding increase in equity belonged to the estate upon conversion. The panel looked to the definition of "property of the estate" in § 541(a), which addresses the contents of the bankruptcy estate upon filing under either Chapter 7 or Chapter 13, and the court's prior opinions holding that the broad scope of § 541(a) means that post-petition appreciation inures to the bankruptcy estate, not the debtor.

Dissenting, Judge Tallman wrote that the Bankruptcy Code as a whole established that post-petition, pre-conversion appreciation belonged to the debtors. He wrote that the majority's reading of § 348(f)(1)(A) created a circuit split and was inconsistent with the statute's structure, object, policies, and legislative history.

## COUNSEL

Steven Hathaway (argued), Law Office of Steven C. Hathaway, Bellingham, Washington, for Appellants.

Peter H. Arkison (argued), Bellingham, Washington, for Appellee.

Russell D. Garrett, Jordan Ramis PC, Portland, Oregon, for Amicus Curiae National Association of Bankruptcy Trustees.

# OPINION

HAWKINS, Circuit Judge:

We must decide whether post-petition, pre-conversion increases in the equity of an asset—i.e., the difference between a home's value and how much is owed on the mortgage, whether a result of market appreciation, payment of secured debt, improvements or otherwise—belong to the bankruptcy estate or to debtors who, in good faith, convert their Chapter 13 reorganization petition into a Chapter 7 liquidation.

Debtors John Felix Castleman, Sr. and Kimberly Kay Castleman (the "Castlemans") filed for Chapter 13 bankruptcy. They listed their home among their assets with a value of $500,000, a mortgage with an outstanding balance of $375,077, and a homestead exemption of $124,923. The bankruptcy court confirmed a Chapter 13 plan, but after roughly twenty months, which included a temporary job loss and deferral of mortgage payments due to the pandemic, Mr. Castleman contracted Parkinson's Disease, and the couple could no longer make their required payments. The Castlemans exercised their right to convert to Chapter 7. In the interim, their home had risen in value an estimated $200,000.[1]   Dennis Burman, the Chapter 7 trustee ("Trustee"), filed a motion to sell the Castlemans' home to recover the value for creditors. The Castlemans objected and argued that the home's increased equity belongs to them and

---

[1] In this case, it appears the increase in equity was attributable primarily, if not exclusively, to market appreciation. Due to the deferral of mortgage payments during the pandemic, the Castlemans actually owed more at the time of filing for conversion ($390,763) than they did at the time of their initial filing.

not the bankruptcy estate under 11 U.S.C. § 348(f)(1)(A).[2]

Although courts are heavily divided on this question,[3] we conclude on de novo review, *Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009), that the plain language of § 348(f)(1)(A), coupled with this circuit's previous interpretation of § 541(a), compel the conclusion that any appreciation in the property value and corresponding increase in equity belongs to the estate upon conversion. We therefore affirm the decisions of the bankruptcy and district courts.

The purpose of the Bankruptcy Code is to grant a "fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks and citation omitted). Individual debtors may petition for bankruptcy under Chapter 7 (liquidation) or Chapter 13 (reorganization). *Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015). Chapter 13 "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three-to-five-year period." *Id*. at 514 (citing §§ 1306(b), 1322, 1327(b)). Chapter 13 can benefit the debtor and creditors: the former keeps his assets, and the latter "usually collect more under a Chapter 13 plan than they would have received

---

[2] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq.

[3] *Compare In re Goins*, 539 B.R. 510, 515–16 (Bankr. E.D. Va. 2015), *In re Goetz*, 647 B.R. 412, 416–17 (Bankr. W.D. Mo. 2022), *In re Peter*, 309 B.R. 792, 794–95 (Bankr. D. Or. 2004), and *Potter v. Drewes (In re Potter)*, 228 B.R. 422, 424 (B.A.P. 8th Cir. 1999), *with In re Barrera*, 22 F.4th 1217 (10th Cir. 2022), *In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021), *In re Hodges*, 518 B.R. 445, 451 (E.D. Tenn. 2014), and *In re Niles*, 342 B.R. 72, 75 (Bankr. D. Ariz. 2006).

under a Chapter 7 liquidation." *Id.*

However, most debtors fail to successfully complete a Chapter 13 repayment plan, which is why "Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 'at any time.'" *Id*. (quoting § 1307(a)). The property of this converted Chapter 7 estate is defined by § 348(f), which provides in relevant part:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title-
>
> (A) property of the estate in the converted case shall consist of **property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion**;
>
> [. . .]
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

(emphasis added). The Trustee does not assert that the Castlemans converted in bad faith, and the Castlemans retained possession of the home on the date of conversion.

In interpreting the Bankruptcy Code, "the first step . . . is to determine whether the language [of a statute] has a plain and unambiguous meaning with regard to the particular

dispute." *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir. 2014). If the plain meaning is unambiguous, it controls. *Id.*; *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016).

Section 348(f) does not define the word "property" or the phrase "property of the estate." However, "property of the estate" is a term of art which appears throughout the Bankruptcy Code. *See, e.g.*, §§ 541, 554(a), 726(a), 1306(a); *see also* Keith M. Lundin, *Lundin On Chapter 13* § 46.1 (2023) ("'Property of the estate' is a phrase of art that is fundamental to almost everything that happens in Chapter 13 practice."); 4 William L. Norton III, *Norton Bankruptcy Law and Practice* § 61:1 (3d ed. 2023) ("[F]or more than two centuries 'property of the estate' has become a term of art unique to bankruptcy law.").

"Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). We therefore look to the definitions of "property of the estate" set forth in other provisions of the Code itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

Under § 541(a)(1), filing for bankruptcy creates an estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The estate also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor

after the commencement of the case." § 541(a)(6).

In *In re Goins*, the court found the trustee was entitled to any post-petition appreciation in assets of the estate, explaining: "[T]he equity attributable to the post-petition appreciation of the property is not separate, after-acquired property . . . The equity is inseparable from the real estate, which was always property of the estate under Section 541(a)." 539 B.R. at 516; *see also In re Goetz*, 647 B.R. at 416 (the broad definition of "property of the estate" in § 541(a) "captures the debtor's entire ownership interest in each asset that exists on the petition date without fixing the estate's interest to the precise characteristics the asset has on that date"). Other courts have held that any post-petition increase in the property's equity is the "proceeds, product, offspring, rents or profits" of the estate's original property under § 541(a)(6), and so became part of the estate when the case commenced. *See In re Potter*, 228 B.R. at 424; *In re Peter*, 309 B.R. at 794–95.

In this circuit, we have likewise concluded that the broad scope of § 541(a), and especially § 541(a)(6), means that post-petition "appreciation [i]nures to the bankruptcy estate, not the debtor." *Schwaber v. Reed* (*In re Reed*), 940 F.2d 1317, 1323 (9th Cir. 1991). We recently re-affirmed this in *Wilson v. Rigby*, noting that when a debtor files for bankruptcy, the "proceeds, product, offspring, rents, or profits" which become part of the estate under § 541(a)(6) "include[] the appreciation in value of a debtor's home." 909 F.3d 306, 309 (9th Cir. 2018). The Castlemans point out that *Wilson* was originally filed as a Chapter 7 case, but the definition of property of the estate in § 541(a) applies equally to Chapter 13. There is no textual support for concluding that § 541(a) has a different meaning upon conversion from Chapter 13. As the district court in this case

aptly summarized the significance of these prior Ninth Circuit decisions:

> It is well settled that in a Chapter 7 case, all property that the debtor acquires post-petition is excluded from the estate. *See, e.g., Harris*, 575 U.S. at 514 (citing § 541(a)(1)). Therefore, if appreciation were a separate, after-acquired property interest, it would have to inure to the debtor. The Ninth Circuit, in finding that appreciation inures to the estate under § 541(a)(6), has necessarily found that increased equity in a pre-petition asset cannot be a separate, after-acquired property interest. This logic applies with equal force in a conversion case.

Many of the courts who have reached a different conclusion regarding post-petition changes in equity have relied on various statements or examples in the legislative history surrounding § 348(f), which was enacted to clarify whether new property acquired during the course of Chapter 13 proceedings becomes property of the converted estate (under § 348(f)(2), this occurs only if the debtor was acting in bad faith). *See, e.g., In re Cofer*, 625 B.R. at 200–02; *In re Nichols*, 319 B.R. at 856. However, because we conclude the language of § 348(f), when read in conjunction with the remainder of the Bankruptcy Code, is not ambiguous, we do not look to legislative history for guidance. *Robinson*, 519

U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous.").[4]

Some courts have also relied on the implicit operation of § 1327(b), which provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Under this reasoning, equity increases from the time of the initial filing up until plan confirmation would inure to the estate, then from time of confirmation until conversion would vest in the debtor, and finally upon conversion, any additional post-conversion changes would benefit the estate. *See, e.g., In re Barrera*, 22 F.4th at 1223–24. However, we find it difficult to believe Congress envisioned this valuation and accounting process without making any explicit cross-reference to § 1327(b), and because in other instances where Congress wanted to exclude assets or certain interests of the debtor from the bankruptcy estate, it has done so with specificity. *See, e.g.,*

---

[4] We recognize that some courts have found § 348(f) to be ambiguous. However, the existence of a division of judicial authority does not itself establish ambiguity in the text. *See, e.g., Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012) (holding provision of Longshore and Harbor Workers' Compensation Act is unambiguous despite disagreement between Fifth, Ninth and Eleventh Circuits); *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (holding term used in Torture Victim Protection Act was unambiguous despite disagreement among several circuits); *Reno v. Koray*, 515 U.S. 50, 64–65 (1995) ("A statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction.") (internal quotation and citation omitted). As we have explained, even if § 348(f) in isolation might be ambiguous, when read in connection with the remainder of the bankruptcy statute as already interpreted by this circuit, its meaning becomes clear. *See United Sav. Ass'n of Tex.*, 484 U.S. at 371 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.").

§ 541(a)(6) (excluding post-petition earnings by an individual in a Chapter 7 case) and § 541(b) (excluding various specific items from the estate, such as funds used to purchase a 529 education plan). If, as the dissent suggests, Congress actually intended to exclude from the revived estate any increase in equity of an estate asset that may have occurred from the time of plan confirmation to conversion, it could have amended § 348(f) further to make this result clear. As written, § 348(f) only clarified that newly-acquired, post-petition property would not become part of the converted estate if the debtor had been acting in good faith.

In sum, the plain language of § 348(f)(1) dictates that any property of the estate at the time of the original filing that is still in debtor's possession at the time of conversion once again becomes part of the bankruptcy estate, and our case law dictates that any change in the value of such an asset is also part of that estate. In this case, that property increased in value. In other cases, the value might decline, or the value of one asset in the estate might increase while other property depreciates in value. This is simply a happenstance of market conditions, which sometimes will benefit the debtor and sometimes benefit the estate.[5] The district court and bankruptcy court correctly concluded that the Castlemans' home (including any post-petition, pre-conversion increase in equity) was again part of the bankruptcy estate pursuant

---

[5] Note that, for example, the debtor's homestead exemption is fixed as of the "snapshot" value on the date of the original filing. *See Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1321 (9th Cir. 1992) ("Were we to accept the Hymans' argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is subject to post-filing *de*preciation, which would give debtors in falling property markets less than the [homestead exemption] guaranteed them by state law.").

to § 348(f)(1) and available to the Trustee for the benefit of the creditors.[6]

   **AFFIRMED.**[7]

---

TALLMAN, Circuit Judge, dissenting.

   As counsel for the trustee aptly put it, John and Kimberly Castleman "tried to do good and tried to pay off their bills" by petitioning for bankruptcy under Chapter 13 and proposing a plan to repay their creditors.[1]  But, unable to complete the repayment plan, they were forced into a Chapter 7 liquidation.  We now must decide whether appreciation in the value of their home during Chapter 13 proceedings becomes part of the converted Chapter 7 bankruptcy estate—an issue which has confounded judges all over the country.  In holding that postpetition, pre-conversion increases in equity belong to the estate, the court both creates a circuit split and effectively punishes the Castlemans for filing under Chapter 13 with the forced sale

---

[6]  As noted above, in this case it appears that the increased equity was attributable to market conditions.  However, the district court indicated that the debtors could file an administrative priority claim for mortgage payments they had made in accordance with the confirmation plan for the benefit of the estate pursuant to § 503(b).  *See In re Peter*, 309 B.R. at 795.  The resolution of any such claim is not before us at this time.

[7] The motion filed by National Association of Bankruptcy Trustees for leave to file an amicus brief [Dkt. Entry No. 17] is granted.  The amicus brief filed on January 9, 2023, is deemed filed.

[1] Oral Argument at 14:07, *Castleman, Sr., v. Burman*, No. 22-35604 (9th Cir. May 9, 2023), https://www.youtube.com/watch?v=_TBWjDPd10k.

of their home.  Because that outcome is not the best reading of the Bankruptcy Code or our precedents, I respectfully dissent.

I

A

Upon filing for bankruptcy, a debtor's assets are immediately transferred to a bankruptcy estate.  11 U.S.C. § 541(a).  However, the debtor may exempt some property—such as an equitable interest in real property used as a residence—from the estate.  *See* § 522(b)(3)(A), (d)(1).  This exemption is commonly referred to as the "homestead exemption."  In 2019, Washington State allowed a maximum homestead exemption of $125,000.  WASH. REV. CODE § 6.13.030 (2019).   After creation of the estate, the bankruptcy court appoints a trustee to oversee it for the benefit of creditors and other interested parties.  *See* 11 U.S.C. §§ 704, 1302.  If, after accounting for encumbrances and exemptions, a particular asset is "of inconsequential value and benefit to the estate," a debtor may ask the court to "order the trustee to abandon" it.  § 554(b).

Filing under Chapter 7 "allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets." *Harris v. Viegalahn*, 575 U.S. 510, 513 (2015).  The trustee will sell the non-exempt property of the estate and distribute the proceeds to creditors. *Id*. (citing §§ 704(a)(1), 726).  But the Chapter 7 estate does not include wages earned or assets acquired by the debtor after filing for bankruptcy.  *Id*. at 513-14.  After liquidation, the debtor's pre-petition debts will generally be discharged. § 727(a).   "Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a

'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Harris*, 575 U.S. at 514.

A Chapter 13 estate works quite differently: the debtor retains possession of all property, § 1306(b), and proposes a plan to repay creditors over a three-to-five-year period. §§ 1321-22. If the bankruptcy court confirms the plan, confirmation "vests all of the property of the estate in the debtor" unless the plan or a court order says otherwise. § 1327(b). However, "property accumulated during the repayment period becomes part of the bankruptcy estate and is used to repay creditors." *Brown v. Barclay* (*In re Brown*), 953 F.3d 617, 620 (9th Cir. 2020). The Bankruptcy Code encourages Chapter 13 filings because they can "benefit debtors and creditors alike." *Harris*, 575 U.S. at 514. Debtors may keep assets, such as a home or car, and creditors "usually collect more under a Chapter 13 plan than they would have received under a Chapter 7 liquidation." *Id*.

When a debtor converts from Chapter 13 to Chapter 7 in good faith, the property of the converted estate is defined by § 348(f)(1)(A), which provides that the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."[2] This statute removes a potential disincentive to Chapter 13 filings: if all assets acquired after filing of the Chapter 13 petition were available to creditors after conversion, the debtor would be "in a worse position than if the petition had been filed in Chapter 7 initially."

---

[2] If a debtor converts in bad faith, § 348(f)(2) makes postpetition, pre-conversion acquisitions available to creditors. Here, all agree the Castlemans converted in good faith due to a pandemic layoff and Mr. Castleman's unfortunate medical diagnosis.

*Brown*, 953 F.3d at 620.  By limiting the converted estate to the property a debtor had at the time of the initial petition, § 348(f) "put[s] the debtor where he would have been, had he filed in Chapter 7 initially."  *Id*.

B

On June 19, 2019, when the Castlemans petitioned for bankruptcy under Chapter 13, their home was worth an estimated $500,000.  They claimed a homestead exemption of $124,923, which was only $77 less than the legally allowed maximum under then-existing Washington law.  The Castlemans also reported that their home was encumbered by a secured mortgage of $375,077.  The bankruptcy court confirmed their Chapter 13 plan on September 25, 2019, and the Castlemans made payments under the plan for twenty months, including a mortgage payment.

On January 12, 2021, with Mr. Castleman unable to work and facing a significant loss of income, the couple moved to convert their case to Chapter 7.  After conversion, the Chapter 7 trustee hired a realtor, who estimated the Castlemans' Bellingham home was worth $700,000 as of April 19, 2021.  Believing the home now had value to the estate, the trustee filed a motion to sell it so that the additional equity could be distributed to creditors.  The Castlemans objected, arguing that postpetition, pre-conversion increases in equity are not "property of the estate" upon conversion under § 348(f)(1)(A).  This is the question that divides our panel.

## II

## A

The Castlemans' reading of § 348(f) is correct. In interpreting the Bankruptcy Code, we must begin with the text. *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir. 2014). There is no debate that the phrase "property of the estate" in § 348(f) is a term of art in bankruptcy law or that the term should be defined by looking to the "broader context of the [Bankruptcy Code] as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). But the court errs in how it applies those principles here. By adopting the trustee's preferred interpretation of § 348(f), the majority sacrifices the text of the bankruptcy statutes on the altar of simplicity.

The court rightly begins by looking to § 541(a), which defines the property of the bankruptcy estate upon filing under either Chapter 7 or Chapter 13. Section 541(a)(1) declares that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." It also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." § 541(a)(6). We have already held that in a Chapter 7 case, § 541(a)(6) means that "appreciation enures to the bankruptcy estate, not the debtor." *Schwaber v. Reed* (*In re Reed*), 940 F.2d 1317, 1323 (9th Cir. 1991). This is because in Chapter 7, the "proceeds, product, offspring, rents, or profits of or from property of the estate" under § 541(a)(6) "include[] the appreciation in value of a debtor's home." *Wilson v. Rigby*, 909 F.3d 306, 309 (9th Cir. 2018).

The majority decides that because we have held appreciation becomes part of the estate in a Chapter 7 case, the same must be true in Chapter 13.[3]  Admittedly, this is a simple resolution to an issue that has vexed bankruptcy courts across the country.[4]  But simplicity cannot take precedence over the text of the Bankruptcy Code, and if we read § 348(f) in light of the Code "as a whole"—rather than just § 541(a)—*Wilson* is not dispositive.  *See Robinson*, 519 U.S. at 341.  The remainder of the Bankruptcy Code clarifies that in Chapter 13 cases, "property of the estate" is defined differently.  § 348(f)(1)(A).

As discussed, a Chapter 7 estate is short-lived: it sweeps in all the debtor's property upon filing and is promptly liquidated to pay creditors.  § 541(a)(1); *Brown*, 953 F.3d at 620.  But in Chapter 13, the debtor retains possession of all property, § 1306(b), and proposes a plan to repay creditors

---

[3] The trustee's briefing faults the Castlemans for not claiming the increase in equity as exempt.  But property which does not become part of the converted estate belongs to the debtor regardless of exemptions.  *See Harris*, 575 U.S. at 521.

[4] *Compare In re Goins*, 539 B.R. 510, 515-16 (Bankr. E.D. Va. 2015) (holding appreciation belongs to the estate), *In re Goetz*, 647 B.R. 412, 416-17 (Bankr. W.D. Mo. 2022) (same), *aff'd*, 651 B.R. 292 (B.A.P. 8th Cir. 2023), *In re Hayes*, Case No. 15-20727-MER, 2019 Bankr. LEXIS 4203, at *22, (Bankr. D. Colo. March 28, 2019) (same), *and In re Peter*, 309 B.R. 792, 794-95 (Bankr. D. Or. 2004) (same), *with In re Barrera* (*Barrera I*), 620 B.R. 645, 649-54 (Bankr. D. Colo. 2020) (holding appreciation belongs to the debtor), *aff'd*, *Barrera II*, No. BAP CO-20-003, 2020 WL 5869458 (B.A.P. 10th Cir. Oct. 2, 2020), *In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021) (same), *In re Hodges*, 518 B.R. 445, 451 (E.D. Tenn. 2014) (same), *In re Niles*, 342 B.R. 72, 75-76 (Bankr. D. Ariz. 2006) (same), *In re Boyum*, No. 05–1044–AA, 2005 WL 2175879, at *2-3 (D. Or. Sept. 6, 2005) (same), *and In re Nichols*, 319 B.R. 854, 857 (Bankr. D. Ohio 2004) (same).

over a period of years.  *See* §§ 1321-22.  If the bankruptcy court confirms that plan, confirmation "vests all of the property of the estate *in the debtor*" unless the plan or a court order says otherwise.  § 1327(b) (emphasis added).[5]  Thus, upon confirmation of a Chapter 13 plan, the debtor is once again the owner of the property.  *Cal. Franchise Tax Bd. v. Jones* (*In re Jones*), 420 B.R. 506, 514-15 (B.A.P. 9th Cir. 2009), *aff'd,* 657 F.3d 921, 928 (9th Cir. 2011); *see also Berkley v. Burchard* (*In re Berkley*), 613 B.R. 547, 552-53 (B.A.P. 9th Cir. 2020).

It follows that when a Chapter 13 plan has been confirmed, appreciation accrues to the debtor.  In *Black v. Leavitt* (*In re Black*), our Bankruptcy Appellate Panel (BAP) considered a case where the debtor moved to sell a rental property after the bankruptcy court had confirmed a Chapter 13 plan revesting that property in the debtor.  609 B.R. 518, 521 (B.A.P. 9th Cir. 2019).  The bankruptcy court ordered the debtor to turn over the proceeds of the sale to the trustee.  *Id*. at 523.  On appeal, the trustee argued that the proceeds and any postpetition appreciation in the property's value were part of the estate under §§ 541(a)(6) and 1306.  *Id*. at 528.  The BAP rejected that argument, holding that "the revesting provision of the confirmed plan means that the debtor owns the property outright and that the debtor is entitled to any postpetition appreciation."  *Id*. at 529.

The Tenth Circuit reached a similar conclusion in *Rodriguez v. Barrera* (*Barrera III*), 22 F.4th 1217 (10th Cir. 2022).  There, the debtors confirmed their Chapter 13 plan, sold their home, and then converted from Chapter 13 to Chapter 7 under § 348(f)(1)(A).  *Id*. at 1221-22.  Observing that "only proceeds 'of or from property of the estate'

---

[5] No such provision or order exists in this case.

become property of the bankruptcy estate" under § 541(a)(6), the Tenth Circuit concluded that section is "operative only before confirmation of the Chapter 13 plan because confirmation 'vests all of the property of the estate in the debtor.'" *Id.* at 1223 (quoting § 1327(b)). "Thus, proceeds generated from the debtor's property after confirmation do not become property of the estate as the underlying property no longer belongs to the estate."[6] *Id.*

The Tenth Circuit declined to decide whether postpetition, pre-conversion appreciation would be included in the converted estate when the property has not been sold before conversion. *Id.* at 1223 n.1. But while this case does not involve a pre-conversion sale, we have already held that postpetition appreciation—like the cash proceeds from the sale in *Barrera III*—is "proceeds" of estate property under § 541(a)(6). *Wilson*, 909 F.3d at 309. Here, the underlying property is the Castlemans' home, and their Chapter 13 plan was confirmed on September 29, 2019. When that occurred,

---

[6] The majority claims this interpretation of § 1327(b) would require a third valuation at confirmation because the trustee would be entitled to pre-confirmation appreciation. Op. at 10-11. But the Tenth Circuit did not adopt this approach, *see Barrera III*, 22 F.4th at 1223-24, and neither should we. In most Chapter 13 cases, the debtor must propose a plan within 14 days of the petition date, *see* FED. R. BANKR. P. 3015(b), and the creditors' meeting generally occurs within 50 days of the petition date, see FED. R. BANKR. P. 2003(a). A confirmation hearing must occur within 45 days of that. 11 U.S.C. § 1324(b). Thus, for most debtors, a Chapter 13 plan will either be confirmed within a few months of the initial petition, or else the case will be dismissed or converted. A property will virtually never significantly change in value in such a short period—in fact, the realtor hired in this case estimated the 2021 value of the Castlemans' home by reviewing sales of comparable homes over a period of six months. If we followed our sister circuit's approach, all postpetition appreciation would belong to the Castlemans.

the home was no longer "property of the estate" and therefore any appreciation in its value is not "[p]roceeds . . . of or from property of the estate."[7]  § 541(a)(6).  I would hold, consistent with the Tenth Circuit, that postpetition, pre-conversion appreciation belongs to the Castlemans rather than the converted Chapter 7 estate.  *See United States v. Anderson*, 46 F.4th 1000, 1005 (9th Cir. 2022) ("In cases requiring statutory interpretation . . . we will not create a circuit split unnecessarily.").

B

While the text of the Bankruptcy Code as a whole establishes that postpetition, pre-conversion appreciation belongs to the Castlemans, the majority's reading of § 348(f)(1)(A) is also inconsistent with the statute's structure, object, policies, and legislative history.  *See Hawkins*, 769 F.3d at 666; *Brown*, 953 F.3d at 623.

In the early 1990s, a circuit split developed on the question of what property should be included in a Chapter 7 estate upon conversion from Chapter 13.  Some courts held that "upon conversion, all postpetition earnings and acquisitions became part of the new Chapter 7 estate, thus augmenting the property available for liquidation and distribution to creditors."  *Harris*, 575 U.S. at 517 (citing *Calder v. Job* (*In re Calder*), 973 F.2d 862, 865-66 (10th Cir. 1992), and *In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1992)).  However, the Third Circuit had taken the opposite view in

---

[7] The court implies this approach would mean that debtors must bear the risk of depreciation as well.  Op. at 11.  But depreciation in a home's value would not change the amount of the debtor's homestead exemption, *see Law v. Siegel*, 571 U.S. 415, 424-25 (2014), and a trustee would probably abandon any asset which depreciated such that it had no value to the estate.  *See* § 554(a).

*Bobroff v. Continental Bank* (*In re Bobroff*), 766 F.2d 797, 802-03 (3d Cir. 1985), and held that a tort claim which accrued during Chapter 13 proceedings was not part of a Chapter 7 estate upon conversion and belonged to the debtor.

Congress resolved this dispute in the Bankruptcy Reform Act of 1994, which added § 348(f) to the Bankruptcy Code. *See* Pub. L. No. 103-394, § 311, 108 Stat. 4106, 4138 (1994) (prior to 2005 amendment). The House Report on the Act made it clear Congress intended to adopt the Third Circuit's view:

> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R. REP. NO. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N 3340, 3366. The report included a specific example:

> [Courts following the *Bobroff* approach] have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that

after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

*Id*. Clearly, Congress believed that home equity which accrued during Chapter 13 proceedings should not be included in the converted estate.

The example in the House Report discusses an increase in equity resulting from the paydown of a secured loan, but the court's decision today covers equity from any source and creates the same disincentive to Chapter 13 filings. When the Castlemans filed for bankruptcy, all of their home equity was exempt. Between that exemption and a secured mortgage, the home had no value to the estate. Had they filed under Chapter 7, they could have either resolved the case quickly or moved to force the trustee to abandon the property. *See* § 554(b); *Barrera I*, 620 B.R. at 655-54. Instead, the Castlemans committed themselves to a five-year Chapter 13 plan, paid creditors out of their postpetition income, and made payments on their mortgage. By the time they were forced to convert to Chapter 7, their home had appreciated in value, so the trustee sought to sell it. Allowing that sale leaves them "in a worse position than if the[ir] petition had been filed in Chapter 7 initially"—the

exact situation Congress sought to prevent. *Brown*, 953 F.3d at 620.

The majority refuses to consider this history because it finds the text of the Bankruptcy Code unambiguously shows that appreciation belongs to the estate. Op. at 9. I respectfully disagree. But that assertion is all the more remarkable in light of the Tenth Circuit's decision in *Barrera III*, 22 F.4th at 1223, and the majority's recognition that courts are "heavily divided" on the proper meaning of § 348(f).[8] Op. at 5. Indeed, even counsel for the trustee seemed to believe that § 348(f) was ambiguous: when asked at oral argument, he admitted the statute is poorly drafted and agreed that "there is no way to reconcile" the text of § 348(f) with § 541(a).[9] To be sure, legislative history is often unhelpful as an aid to statutory construction. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 376-78 (2012). But here, it is consistent with the text of the Bankruptcy Code, directly relevant to the case at hand, and unequivocally confirms that appreciation in the value of the Castlemans' home should not become part of the converted estate.

## III

Because reasonable judicial minds disagree, there is—once again—a need for Congress to clarify the operation of § 348. Though I dissent from my colleagues' reading of the

---

[8] Certainly a division of authority, standing alone, does not establish ambiguity. But other courts have identified powerful arguments for a different reading of § 348(f), and the creation of a circuit split in particular is to be "avoid[ed] if at all possible." *Anderson*, 46 F.4th at 1008. We ought to employ the full panoply of statutory interpretation tools before departing from the Tenth Circuit's approach.

[9] Oral Argument at 24:06-24:52.

statute, it is far from unfounded.  Whether Congress thinks postpetition, pre-conversion appreciation of an asset in the course of Chapter 13 proceedings should or should not become part of the converted Chapter 7 estate, it should amend § 348(f) to make the answer clear.  At least one scholar has already proposed amendments to § 348(f) which would resolve the dispute.  *See* Lawrence Ponoroff, *Allocation of Property Appreciation: A Statutory Approach to the Judicial Dialectic*, 13 WM. & MARY BUS. L. REV. 721, 756-57 (2022).  States may also wish to amend their homestead exemptions.  *See* § 522(b)(3)(A).  For example, while the change came too late to help the Castlemans, Washington State responded to our decision in *Wilson* by allowing debtors to exempt "[a]ny appreciation in the value of the debtor's exempt interest in the property during the bankruptcy case."  *See* Act of May 12, 2021, Ch. 290 § 5, 2021 Wash. Sess. Laws 2306-07 (codified at WASH. REV. CODE § 6.13.070(2) (2022)).

In the absence of legislative action, it remains our duty to read § 348(f) and say what the law is.  I have no doubt that in holding that postpetition, pre-conversion appreciation becomes part of the converted bankruptcy estate, my colleagues in the majority have discharged that duty to the best of their abilities.  But in striving to do the same, I find the text, structure, and history of the statute compel the opposite conclusion.  Because I would hold that the appreciation belongs to the Castlemans, I respectfully dissent.