Filed 2/9/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KUMCHAI KIM MIYAHARA, | B317726 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. 20STCV44166) |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yolanda Orozco, Judge. Affirmed in part, reversed in part, and remanded with directions.

Shapero Law Firm and Sarah Shapero for Plaintiff and Appellant.

Lagerof and Jeremy E. Shulman for Defendant and Respondent.

_____

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part C in the Discussion.

# INTRODUCTION

This case involves the trial court's application of judicial estoppel to an individual homeowner on demurrer. We conclude the trial court erred by not giving the homeowner leave to allege facts that her failure to disclose the present lawsuit in a prior bankruptcy was the product of mistake or inadvertence. In 2017 Kumchai Kim Miyahara (Miyahara) was experiencing financial difficulty and sought to refinance her home. While in the process of obtaining a refinance loan that would have enabled her to keep her home, Miyahara discovered a fraudulent lien had been placed on her property by West H&A LLC. The fraudulent lien prevented her from obtaining the loan.

Miyahara sought the assistance of her lender, Wells Fargo Bank, N.A. (Wells Fargo), in clearing title but was unsuccessful. Wells Fargo then filed a notice of default. Miyahara subsequently filed for chapter 13 bankruptcy in 2017. The bankruptcy court confirmed her bankruptcy plan in 2018 but dismissed her case in 2019 after Miyahara failed to make payments under the plan.

In 2020 Miyahara filed this action claiming that the actions of Wells Fargo prevented her from securing an interest rate comparable to one she would have received prior to filing for bankruptcy. Wells Fargo demurred, arguing Miyahara's complaint was barred by judicial estoppel because Miyahara failed to list any claim against Wells Fargo in her bankruptcy schedule. After Wells Fargo filed its demurrer, Miyahara amended her bankruptcy schedule to include her claim against Wells Fargo. The trial court sustained the demurrer without

leave to amend, agreeing with Wells Fargo that her lawsuit was barred by judicial estoppel.

Miyahara argues the trial court erred in ruling her complaint was barred by judicial estoppel.  Although we conclude Miyahara took inconsistent positions and that the bankruptcy court accepted her original position, the trial court erred in concluding on demurrer that, as a matter of law, her failure to disclose was not the product of mistake or inadvertence. Miyahara is entitled to leave to amend to allege such facts. Although not considered by the trial court, we also conclude the demurrer should be sustained for the alternative reason that Miyahara's causes of action fail to state a claim.  We determine that Miyahara's causes of action for breach of the covenant of good faith and fair dealing (first cause of action), and for violations of the Rosenthal Act, Civil Code section 1788.17 (second cause of action), Business and Professions Code section 17200 (third cause of action), and the Homeowner Bill of Rights, Civil Code section 2924.17 (fourth cause of action) fail to state a claim, but that she should be granted leave to amend except as to the fourth cause of action.

Accordingly, we reverse the judgment and affirm in part and reverse in part the order sustaining the demurrer with directions to the trial court to allow Miyahara leave to amend as outlined above.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Miyahara Files this Action*
According to the allegations in the complaint, Miyahara purchased real property located on Hercules Drive in Los Angeles

3

in June 1988.  At the time of the purchase, Miyahara "obtained a loan from World Savings Bank, FSB in the amount of $740,000. In March 2006, [Miyahara] obtained a [refinance] loan for the Property from World Savings Bank in the amount of $920,000."[1]

In 2013 and 2014 Miyahara became estranged from her husband "and he stopped supporting her."  Following the estrangement, "Plaintiff called Wells Fargo to request a loan modification [and] Wells Fargo told [her] to work with the U.S. Department of Housing and Urban Development."  Although Miyahara worked with the Department of Housing and Urban Development (HUD) "and other family members to secure a loan modification, . . . her loan modification application was ultimately declined."  According to "[a] letter from HUD . . . the property was valued by an outside appraisal at $2.5 million, a loan modification was not in Defendant's interest, and Defendant wanted to foreclose."  Miyahara "pawned all of her personal belongings to pay the outstanding balance of arrears to avoid foreclosure."

In November 2016 Miyahara "again faced financial hardship and had trouble making her loan payments."  Miyahara again contacted Wells Fargo "to request a loan modification [and] was told by Wells Fargo that they would help her, and to simultaneously explore other options for refinancing.  Plaintiff

---

[1]      In January 2008 World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB.  Wachovia Mortgage merged with Wells Fargo Bank, N.A. in November 2009.  (See *Brown v. Wells Fargo Bank, N.A.* (2012) 204 Cal.App.4th 1353, 1355, fn. 1 ["After World Savings Bank FSB issued the loan . . . it changed its name to Wachovia Mortgage FSB.  Wachovia Mortgage merged into and became a division of Wells Fargo Bank, NA."].)

enlisted the services of Fritz Hoffman of South Bay Equity Lending, who was able to secure Plaintiff another loan."

On April 5, 2017 "during the time that [Miyahara's] refinance was in process, a Notice of Default was recorded by Wells Fargo."[2]  In June 2017 the loan secured by Hoffman went into escrow and "[a]t or around that time, Plaintiff first learned of a $920,000 lien on the property from West H&A LLC."  The assignment of deed of trust purported to assign the deed from Wells Fargo to West H&A LLC.[3]  The discovery of the lien "halted . . . refinance."

Upon learning of the lien, Miyahara sought assistance from Wells Fargo to clear title so she could refinance the property.  But "conversations with Wells Fargo representatives did not result in any assistance with the lien."  On July 26 Hoffman contacted Wells Fargo on behalf of Miyahara.  Wells Fargo informed Hoffman "the assignment should be viewed as invalid" and "there was nothing more they could do."  Although "Wells Fargo understood that the invalid lien . . . would interfere with [Miyahara's] ability to refinance her mortgage . . . [Wells Fargo] continued with foreclosure proceedings."

On August 2 Miyahara hired attorney Robert E. Opera "to speak to Wells Fargo on her behalf to resolve the invalid mortgage assignment."  Since the foreclosure sale was set for September 20, however, Miyahara "was forced to hire" a

---

[2]    The notice of default served by Wells Fargo indicated Miyahara was $39,042.68 behind in her payments.

[3]    The assignment of deed of trust was dated June 12, 2017 and signed by Michael C. Jackson and Ryan Alexander Urquiziu on behalf of West H&A LLC.  The assignment of deed of trust was not signed by anyone on behalf of Wells Fargo.

5

bankruptcy attorney to file a chapter 13 bankruptcy petition on her behalf in order "to stay the foreclosure on the property." Miyahara filed her bankruptcy petition on September 19.

In June 2018, while her bankruptcy was pending, Wells Fargo's mortgage fraud division contacted Miyahara to inform her a fraudulent lien was found on her account, and she should contact the police. In late 2018 Miyahara's bankruptcy attorney "received a letter from Wells Fargo stating that they were taking West H&A to court." The bankruptcy attorney later "received a second letter from Wells Fargo, indicating that they won their case against West H&A" making Wells Fargo once again the first lienholder on Miyahara's property.

The judicially noticeable facts before the trial court provide additional context. In August 2018 Wells Fargo filed a motion for relief from the automatic bankruptcy stay "so that title can be cleared to the subject property in the name of Ms. Miyahara and that Wells Fargo Bank, N.A. be named first lienholder on the property via Quiet Title, Declaratory Judgment and Cancellation of Instrument action in California state court." According to the motion for relief, the lien filed by West H&A LLC "has been one of many fraudulent assignments in various locations across the United States as part of a conspiracy and scheme to collect mortgage payments from homeowners and to defraud and confuse lenders such as Wells Fargo Bank N.A." Miyahara stipulated to the motion and the bankruptcy court granted it, but specifically ordered that "the automatic stay shall remain in effect with respect to any foreclosure proceedings on the subject

real property.  The relief sought by Wells Fargo does not affect or modify the Chapter 13 Plan."[4]

The fraudulent lien was removed from the property, but Miyahara was unable to make agreed-upon payments under her bankruptcy plan.  "On December 24, 2019, Plaintiff received a letter that her Chapter 13 Bankruptcy Petition had been dismissed."

"On January 21, 2020 a Notice of Trustee Sale was recorded on the Property."  Although Miyahara sought an extension, Wells Fargo would not extend the trustee sale date.  In May 2020 Miyahara applied for another refinance loan but was only eligible for a loan with 9.5 percent interest.  As a result of the stress caused by this process, Miyahara "has broken out in hives all over her body."

On November 17, 2020 Miyahara filed her complaint against Wells Fargo for intentional interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, violation of Civil Code section 1788.17, and violation of Business and Professions Code section 17200.  The complaint alleged Miyahara "could not refinance her mortgage because of the invalid lien" and, consequently, "lost the refinance offer when she was forced to file for Chapter 13 bankruptcy [and]

---

[4]     In April 2018 Nationstar Mortgage LLC filed a lawsuit in federal court against West H&A LLC and numerous other parties claiming that they engaged in nationwide fraudulent activity to defraud both property owners and lenders.  The district court eventually appointed a temporary receiver to clear title to the properties that were impacted by the fraudulent scheme.  The district court cancelled and declared void *ab initio* the fraudulent assignment recorded on Miyahara's home by West H&A LLC on March 27, 2019.

7

is unable to secure an interest rate comparable to pre-bankruptcy refinance rate."

B.    *Wells Fargo Demurs to the Complaint, and Miyahara Files a First Amended Complaint and Amends Her Chapter 13 Bankruptcy Schedule*

Wells Fargo demurred to the complaint.  Acknowledging that Wells Fargo and Miyahara were "targets of a fraud attempt by non-party West H&A LLC," Wells Fargo argued it "had no obligation to clear the fake assignment recorded on the Property title [but] did so anyways at its [own] expense" and that it "was well within its rights to purse foreclosure to address [Miyahara's] payment default that began more than four years ago."  It further argued the complaint was barred by the doctrine of judicial estoppel, and requested judicial notice of Miyahara's chapter 13 bankruptcy schedule to argue "she never disclosed any claims against Wells Fargo" before the bankruptcy court confirmed the bankruptcy plan, and which was eventually dismissed by the bankruptcy court in December 2019 due to Miyahara's failure to make agreed-upon payments.  Wells Fargo also contended the complaint did not plead sufficient facts to state a cause of action.

Rather than oppose the demurrer, Miyahara filed a first amended complaint on June 24, 2021.  The first amended complaint eliminated the cause of action for intentional interference with prospective economic advantage and added a new cause of action for violation of Civil Code section 2924.17.

On July 2, 2021 Miyahara filed a motion to reopen her chapter 13 bankruptcy case, which the bankruptcy court granted.  On July 13, 2021 Miyahara amended her chapter 13 bankruptcy schedule to include "Claims against Wells Fargo for mishandling

of debtor's loan." The bankruptcy court permitted the filing of the amended schedule, but there is no record of any activity to reprocess the amended schedule or the chapter 13 plan based on the new information presented in the amended bankruptcy schedule.[5]

C.     *Wells Fargo Demurs to the First Amended Complaint and the Trial Court Sustains the Demurrer Without Leave to Amend*

On August 5, 2021 Wells Fargo demurred to the first amended complaint. Wells Fargo again argued Miyahara was judicially estopped from pursuing her claim because of her failure to list Wells Fargo in her original bankruptcy filing, and that each cause of action was insufficiently pled.

Miyahara filed an opposition. According to Miyahara, "[w]hat makes Defendant's actions particularly egregious is the fact that at the time the invalid lien was discovered, Plaintiff was seeking to refinance her mortgage to avoid foreclosure. Instead of taking any action to assist Plaintiff . . . Defendant intentionally continued to pursue the foreclosure. As a result, Plaintiff was left with no choice but to file for bankruptcy . . . . Now, following bankruptcy, Plaintiff cannot secure a loan with interest rate below 9.5%. Plaintiff now faces a continually growing amount of arrears and the imminent loss of her property to foreclosure." Miyahara argued judicial estoppel did not apply because she disclosed "Claims against Wells Fargo for mishandling of debtor's

---

[5]     We grant Miyahara's request to take judicial notice of the bankruptcy claims register, and trustee's final report and account dated February 12, 2020. (Evid. Code, § 452, subd. (d) [court may take judicial notice of "any court of record of the United States"].)

9

loan" in her amended bankruptcy schedule, and also argued each cause of action was sufficiently pled to state a claim.

The trial court sustained Wells Fargo's demurrer without leave to amend and ordered defendant to submit a proposed judgment of dismissal. The trial court reasoned Miyahara was judicially estopped from pursing this action against Wells Fargo because "she failed to disclose on her Chapter 13 Schedule or elsewhere that she had assets in the form of potential claims against Defendant . . . Plaintiff now asserts an inconsistent position, that she has a potential asset by way of causes of action against Defendant."

As to Miyahara's amendment of her bankruptcy schedules to include "claims against Wells Fargo for mishandling of [her] loan," the trial court explained this amendment was made after the bankruptcy had already been dismissed. As the trial court explained, "Plaintiff argues that she amended her Chapter 13 schedule on July 13, 2021 in order to include her causes of action against Defendant as assets. . . . [A]t the time plaintiff amended the schedule the Bankruptcy Action was no longer pending having been dismissed on December 23, 2019. . . . [¶] Plaintiff only amended her Chapter 13 Schedule after Plaintiff learned this was a ground upon which Defendant intended to demurrer . . . A plaintiff's amendment of a bankruptcy schedule only after a defendant files a dispositive motion on judicial estoppel grounds is insufficient, particularly where a party had knowledge of her potential claims at the time the original bankruptcy schedule was filed with the Bankruptcy Court."

The trial court entered judgment on November 29, 2021. Miyahara timely appealed.

# DISCUSSION

A.  *Standard of Review*

"'"On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.'" [Citation.]  In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable."  [Citation.]  We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling.'"  (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1174; see *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

"When a trial court sustains a demurrer without leave to amend, 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . .  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . .  The plaintiff has the burden of proving that an amendment would cure the defect.'"  (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 155; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

B.  *Judicial Estoppel*

"'"[J]udicial estoppel is an equitable doctrine aimed at preventing fraud on the courts."'"  (*Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118.)  It is an "extraordinary remedy that is applied 'with caution.'"  (*Kitty-Anne Music Co. v. Swan* (2003) 112 Cal.App.4th 30, 35; accord, *Haley v. Dow Lewis Motors, Inc.*

(1999) 72 Cal.App.4th 497, 511.) "The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987; accord, *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 532-533.)

As noted by *Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170, "We do not suggest that there are 'inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.' [Citation.] Further, given that 'judicial estoppel is an equitable doctrine, . . . its application, even where all necessary elements are present, is discretionary.'" Whether judicial estoppel applies is a question of law. (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 597; accord, *Kitty-Anne Music Co. v. Swan*, *supra*, 112 Cal.App.4th at p. 35.)

"[W]here a debtor in bankruptcy violates its statutory and fiduciary duty to disclose a current claim during a bankruptcy proceeding, equitable and judicial estoppel operate as a bar to further litigation by the debtor." (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350.) "'By virtue of this failure to disclose, equitable and judicial estoppel operate against further litigation.'" (*Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 138; see *Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 783 (*Hamilton*) ["In the bankruptcy context, a party is judicially estopped from asserting

12

a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."].) ""'The rationale''''" for these decisions ""'is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding."''" (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 140 (*Gottlieb*); accord, *Hamilton*, at p. 785.)

1.    *Miyahara Took Inconsistent Positions in the Bankruptcy Court and Trial Court*

Miyahara argues the trial court erred in finding she took an inconsistent position when she failed to list any claims or causes of action against Wells Fargo in her original chapter 13 bankruptcy schedule.[6] Miyahara contends her original bankruptcy schedule identified West H&A LLC's "fraudulent claim of $300,000" and the "debtor to do quiet title action." Although Miyahara admits she "could have identified the claim more specifically or" separately listed the claim, she contends "the claims are not clearly inconsistent since [Miyahara] did actually identify the lien issue that gave rise to the dispute against [Wells Fargo]." We disagree because the bankruptcy

_____

[6]    "Chapter 13 bankruptcy is a voluntary proceeding that allows a debtor to retain control over some assets while the debtor repays creditors over a three-to-five-year period. In exchange for retaining control of some assets, the property accumulated during the repayment period becomes part of the bankruptcy estate and is used to repay creditors." (*Brown v. Barclay* (9th Cir. 2020) 953 F.3d 617, 619-620.)

13

laws require all claims and causes of action against third parties, such as Wells Fargo, be disclosed.

"The bankruptcy code . . . places an affirmative duty on debtors to schedule their assets and liabilities with the bankruptcy court." (*Yack v. Washington Mutual Inc.* (N.D. Cal. 2008) 389 B.R. 91, 95-96, citing 11 U.S.C. § 521(1).) This includes "'*contingent and unliquidated claims*'" as well as "'*all potential causes of action.*'" (*Gottlieb, supra,* 141 Cal.App.4th at p. 133; accord, *Hamilton, supra,* 270 F.3d at p. 778.) In chapter 13 bankruptcy proceedings, a debtor must disclose not only the claims he is aware of when he files a petition, but also those potential claims which are acquired "after the commencement of the case but before the case is closed, dismissed, or converted." (11 U.S.C. § 1306(a)(1); accord, *Gottlieb,* at p. 133.)

Although Miyahara identified West H&A LLC's fraudulent lien in her original chapter 13 schedule, she never identified any claim or cause of action against Wells Fargo while her bankruptcy was pending. "'Courts of various jurisdictions have held that a debtor's assertion [in a civil action] of legal claims not disclosed in earlier bankruptcy proceedings constitutes an assumption of inconsistent positions. . . . This holding stems from the requirement that a debtor seeking the shelter provided by federal bankruptcy laws disclose all legal or equitable property interests to a bankruptcy court. . . . [¶] The omission of a cause of action or claim "from . . . mandatory bankruptcy filings is tantamount to a representation that no such claim existed."'" (*Gottlieb, supra,* 141 Cal.App.4th at p. 137.)

14

*Hamilton* is instructive. There the debtor filed a chapter 7 bankruptcy case in which he listed on his schedule a $160,000 vandalism loss against his estate but failed to list on his schedule of assets a claim against his homeowners' insurer for this same loss. (*Hamilton*, *supra*, 270 F.3d at p. 781.) After the debtor received his discharge in bankruptcy, he filed a claim against the insurer in district court following the dismissal of his bankruptcy case. (*Id*. at pp. 781-782.) The Ninth Circuit concluded the lawsuit was barred by judicial estoppel because "Hamilton clearly asserted inconsistent positions. He failed to list his claims against State Farm as assets on his bankruptcy schedules, and then later sued State Farm on the same claim." (*Id*. at p. 784.) Although the debtor claimed State Farm "was fully aware of his pending claims," this was insufficient because "Hamilton is required to have amended his disclosure statements and schedules to provide the requisite notice, because of the express duties of disclosure imposed on him by 11 U.S.C. 521(1), and because both the court and Hamilton's creditors base their actions on the disclosure statements and schedules." (*Ibid*.)

Similarly, Miyahara failed to list her claim against Wells Fargo and, after her bankruptcy was dismissed in December 2019, she filed this action against Wells Fargo in November 2020. This is an inconsistent position that was not rectified by filing an amended bankruptcy schedule after the bankruptcy petition had already been dismissed by the bankruptcy court. (See 11 U.S.C. § 1306(a)(1) [in chapter 13 bankruptcy proceedings, debtors must disclose not only the claims they are aware of when filing a petition, but also potential claims acquired "after the commencement of the case but before the case is closed, dismissed, or converted"]; see *Balthrope v. Sacramento County*

*Dept. of Health and Human Services* (9th Cir. 2010) 398 Fed.Appx. 285, 286 ["Contrary to Balthrope's contention, he was required to amend his bankruptcy petition to include the post-petition claim because his Chapter 13 bankruptcy proceeding had not been closed, dismissed, or converted."].)

2. *The Bankruptcy Court Accepted Miyahara's Position*

The bankruptcy court confirmed Miyahara's chapter 13 bankruptcy plan on January 24, 2018. Despite the bankruptcy court's confirmation of her plan, Miyahara contends she did not successfully persuade the bankruptcy court to adopt an inconsistent position. According to Miyahara, she "proposed to pay her regular monthly mortgage payment and cure all pre-petition arrearages owed to Wells Fargo Bank" and the bankruptcy court, in confirming her chapter 13 plan, ordered her to pay 100 percent of all nonpriority, unsecured creditors, including Wells Fargo. (See *Gottlieb*, *supra*, 141 Cal.App.4th at p. 137 ["Nevertheless, one of the judicial estoppel factors— success in asserting the prior position—is not present: The bankruptcy court did not 'adopt[] the [prior] position or accept[] it as true.'"]; accord, *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1613 ["the court found the doctrine did not apply because 'the bankruptcy court did not adopt or accept the truth of [plaintiff's] position that [the debtor] did not have any legal claims' and 'the bankruptcy case was dismissed without confirmation of a plan of reorganization'"].)

16

The bankruptcy court confirmed Miyahara's bankruptcy plan based on the disclosures made in her bankruptcy schedule, and thus the bankruptcy court accepted her position for purposes of judicial estoppel.[7]  As *Hamilton* explained, "'In chapter 13 cases, debtors file schedules on which the chapter 13 trustee and the court rely to confirm chapter 13 plans.  In those chapters, the discharge occurs only if the plan is confirmed; therefore, false statements in the schedules or disclosure statement are effectively "accepted" by the Court.'"  (*Hamilton v. Greenwich Investors XXVI, LLC, supra*, 195 Cal.App.4th at p. 1611, fn. 4.)

Although the bankruptcy court ultimately dismissed Miyahara's bankruptcy petition, it did so after confirming her plan, which is sufficient for purposes of judicial estoppel.  (See *Gottlieb, supra*, 141 Cal.App.4th at p. 141 ["'The meaning of "acceptance" in the bankruptcy context is construed broadly to "protect[] the integrity of the bankruptcy process." . . .  Among other possibilities, . . . the confirmation of a plan may constitute sufficient "acceptance" of the accuracy of schedules so as to permit judicial estoppel.'"]; see also *Ah Quin v. County of Kauai Department of Transportation* (9th Cir. 2013) 733 F.3d 267, 271 ["In the bankruptcy context, the federal courts have developed a

---

[7]     Wells Fargo also argues the bankruptcy court's stay indicates it accepted Miyahara's representations and that gave her an unfair advantage.  But a bankruptcy stay is automatic upon the filing of the petition and does not depend on the specific claims debtors list in their bankruptcy schedules.  (See *Gottlieb, supra*, 141 Cal.App.4th at p. 142 ["The automatic stay cannot be deemed an adoption or acceptance of [debtor]'s prior position because it was not premised even in part on [its] nondisclosure of the legal claim."]; *id.* at p. 144 ["'that benefit existed irrespective of the claims [debtor] listed (or failed to list) in her filings'"].)

17

basic default rule:  If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action."].)

3.    *The Trial Court Improperly Determined on Demurrer that Miyahara's Actions Were Not the Result of Mistake or Inadvertence*

Miyahara concedes her original bankruptcy schedules did not list her present claim against Wells Fargo but argues that this was the result of mistake or inadvertence.  "'[T]he doctrine of judicial estoppel does not apply "when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court." [Citation.]  An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing.'" (*Haley v. Dow Lewis Motors, Inc.*, *supra*, 72 Cal.App.4th at pp. 509-510; accord, *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 [judicial estoppel does not apply when the inconsistent positions were the ""'result of ignorance, fraud, or mistake'""]; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 ['"The gravamen of judicial estoppel is not privity, reliance, or prejudice.  Rather, it is the intentional assertion of an inconsistent position that perverts the judicial machinery.'"].)  Accordingly, courts examine "whether a debtor has engaged in a deliberate scheme to mislead and gain unfair advantage, as opposed to having made a mistake born of misunderstanding, ignorance of legal procedures, lack of adequate legal advice, or some other innocent cause." (*Cloud v.*

18

*Northrop Gruman Corp*. (1998) 67 Cal.App.4th 995, 1020
(*Cloud*).)

Miyahara was represented by counsel in her bankruptcy and argues she was "not attempting to '[keep] any potential proceeds from creditors' by concealing a claim against Wells Fargo [and her] voluntary plan provided for full payment to Wells Fargo, without objection to the claim, as well as 100% to all remaining creditors."  In other words, Miyahara contends that despite her nondisclosure, she did not intentionally ""[c]onceal [her] claims; get rid of [her] creditors on the cheap, and start over with a bundle of rights.""" (*Gottlieb*, *supra*, 141 Cal.App.4th at p. 146.)  Indeed, "nondisclosure in bankruptcy filings, standing alone, is insufficient to support the finding of bad faith intent necessary for the application of judicial estoppel" (*Cloud*, *supra*, 67 Cal.App.4th at pp. 1017-1019 ["'We are persuaded . . . that policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding.  Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. . . . [W]e are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the "strong medicine" of judicial estoppel.'"]).

Wells Fargo contends that "Miyahara does not cite to anything in the record supporting an argument for inadvertence, and no such facts exist[].  To the contrary, the record confirms the absence of inadvertence since Miyahara was represented by bankruptcy counsel and clearly disclosed her claims regarding

19

West H&A LLC." But the record also demonstrates that Wells Fargo initially rejected Miyahara's request to help her clear title before the bankruptcy and then decided it would clear title while Miyahara was in bankruptcy, potentially leading her to believe she had no claim against Wells Fargo because it was doing what she had initially requested.

In any event, this case was decided on demurrer and Miyahara was not given leave to allege facts supporting "a mistake born of misunderstanding, ignorance of legal procedures, lack of adequate legal advice, or some other innocent cause." (*Cloud*, *supra*, 67 Cal.App.4th at p. 1020.) More broadly, "[c]ases concerning judicial estoppel have generally been decided after a fact-finding or evidence-reviewing proceeding of some sort" because the doctrine often "requires consideration of the evidence." (*Id.* at pp. 1019-1020 [reversing judgment on the pleadings because factual issues precluded application of judicial estoppel]; see *Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 597 [judicial estoppel did not apply where defendant failed "to adduce evidence [plaintiff] intentionally omitted his claim" from his chapter 13 bankruptcy schedules].)

Wells Fargo further argues the timing of Miyahara's amendment to her bankruptcy schedule raises an inference her omission was deceitful, citing two federal cases decided in different procedural postures.[8] Although it is plausible the

---

[8] *Dzakula v. McHugh* (9th Cir. 2014) 746 F.3d 399 affirmed a dismissal based on Federal Rule of Civil Procedure 12(b)(1), which goes beyond the pleadings and did not apply California's equitable estoppel standards. *Ceja-Corona v. CVS Pharmacy,*

timing of her amendment to the bankruptcy schedules could support an inference of bad faith, we cannot say this is so as a matter of law. Rather, it is reasonable to infer from Miyahara's disclosure of her potential claim against West H&A LLC involving the fraudulent lien and her full payment plan to all her creditors (even if she subsequently defaulted after the plan was confirmed) that her failure to disclose her claim against Wells Fargo was not part of a """"scheme to mislead the [bankruptcy] court"""" or her creditors. (*Haley v. Dow Lewis Motors, Inc, supra*, 72 Cal.App.4th at p. 509; see *Cloud, supra,* 67 Cal.App.4th at p. 1019; see also *Gottlieb, supra*, 141 Cal.App.4th at p. 146.) On demurrer Miyahara is entitled to reasonable inferences in her favor. (See *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 952 ["On demurrer, we draw all reasonable inferences in favor of the plaintiff."].) Further, as noted above, whether Miyahara's failure to list her claims was the result of mistake or inadvertence raises factual questions not amenable to resolution on demurrer. (See *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1368 ["Questions of fact may be resolved on demurrer only when there is only one legitimate inference to be drawn from the allegations of the complaint."]; see also *Cloud*, at p. 1021 ["[T]he doctrine of judicial estoppel ought to be applied only quite sparingly. In order to determine whether to apply the doctrine in a given case, the facts must be carefully evaluated. That cannot be done on a pleading motion, and hence the judgment here must be reversed."].)

---

*Inc.* (9th Cir. 2016) 664 Fed.Appx. 649 affirmed a dismissal after summary judgment.

21

In sum, the trial court should have allowed Miyahara an opportunity to amend her complaint to allege facts showing why her conduct was the result of mistake or inadvertence. (See *Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 432 ["'When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment.  If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so.'"].)

C.      *Miyahara's Causes of Action Fail To State a Claim, but She Is Generally Entitled to Leave To Amend***

Wells Fargo argues that even if judicial estoppel does not bar Miyahara's complaint, we should nevertheless affirm because she "lacked any viable claim."  The trial court did not reach the issue of whether each cause of action was sufficiently pled, but "[a] judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground."  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)  "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . .  The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "[S]uch a showing can be made for the first time to the reviewing court."  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001)

---

**    See footnote *, *ante*.

22

93 Cal.App.4th 700, 711; accord, *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154.)

## 1. *Implied Covenant of Good Faith and Fair Dealing*

"Under California law, every contract includes an implied covenant of good faith and fair dealing." (*Prager University v. Google LLC* (2022) 85 Cal.App.5th 1022, 1039.) "The covenant is read into contracts and functions "'as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" . . . A breach of the implied covenant of good faith is a breach of the contract [citation], and 'breach of a specific provision of the contract is not . . . necessary' to a claim for breach of the implied covenant of good faith and fair dealing." (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.)

Here, the operative complaint alleges Wells Fargo breached the implied covenant of good faith and fair dealing "by continuing to foreclose on the Property after learning of the invalid lien, which Wells Fargo understood was preventing Plaintiff from refinancing her mortgage. Wells Fargo knew that the lien on Plaintiff's account was invalid yet refused to take any action to remedy the situation so that Plaintiff could avoid foreclosure. Instead, Wells Fargo forced Plaintiff to file for bankruptcy to stay the foreclosure proceedings, thereby impacting her ability to refinance her mortgage in the future."

Wells Fargo argues this allegation is insufficient "because she was . . . in default under the loan prior to any activity concerning the fake assignment," and that Miyahara "failed to specify an express contractual right that was allegedly interfered with, belying any breach of implied covenant claim." Although Miyahara contends the contract allowed her the opportunity to pay off the default following a breach, she concedes she did not specify the contractual term upon which she relies and asks for leave to amend so she can "set forth the exact term that the Defendant breached." We agree that leave should be given in order to allow Miyahara to allege what clause of the contract was allegedly breached and whether the alleged provision upon which she relies is "'reasonably susceptible' to the meaning ascribed to it in the complaint." (*Klein v. Chevron U. S. A., Inc.* (2012) 202 Cal.App.4th 1342, 1384-1385; see *Connell v. Zaid* (1969) 268 Cal.App.2d 788, 795 ["'in considering a pleading attacked by general demurrer,' plaintiff's "'construction of . . . [the contract] should be accepted, if such construction be reasonable'"'"].)

Wells Fargo also argues Miyahara failed to allege how she was damaged by any alleged breach. But Miyahara argues she can allege "she has suffered loss of money" in an amended complaint. We agree Miyahara should be given the opportunity to allege what damages, if any, she may have suffered. (See *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 297 ["The trial court has discretion to allow amendments to the pleadings 'in the furtherance of justice.' (Code Civ. Proc., § 473, subd. (a)(1).) 'This discretion should be exercised liberally in favor of amendments.'"]

24

## 2. *The Rosenthal Act*

"'The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."'"' (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 77.) The Act prohibits specified acts by debt collectors (Civ. Code, §§ 1788.10-1788.16), and requires them to comply with provisions of the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.). Miyahara alleges Wells Fargo's foreclosure violated the Rosenthal Act.

Wells Fargo argues this cause of action is time-barred because "[a] cause of action under the Rosenthal Fair Debt Collection Practices Act (RFDCPA) must be brought 'within one year from the date of the occurrence of the violation,'" which, according to Wells Fargo, occurred in 2017 when Miyahara learned Wells Fargo was attempting to foreclose on her property. There is a one-year statute of limitations from the date of occurrence of the violation (Civ. Code, § 1788.17, subd. (f)), but the law recognizes an exception for a continuing violation. (See *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 344-345 [discussing continuing violation doctrine].) Although not alleged in the operative complaint, Miyahara argues on appeal she could amend her complaint to allege she "continued to be harmed by Respondent's refusal to correct the unlawful lien and, in fact, continues to be harmed, because she had to file for bankruptcy which has negatively impacted her credit and she can no longer obtain a low interest rate as a result." Such allegations of a continuing harm, as opposed to a continuing violation, are insufficient. Further, "[t]he test . . . for use of the continuing violation doctrine is whether the violations constitute 'a continuing pattern and course of conduct,'

25

or 'unrelated discrete acts.'" (*Komarova*, at p. 344.) Miyahara should have the opportunity to amend to allege facts, if any, demonstrating how Wells Fargo engaged in a continuing violation that extended into the limitations period. (*Id*. at p. 345 ["because the harassing phone calls were a continuing course of conduct that extended into the limitations period, plaintiff could recover under the continuing violation doctrine for all of the violations that occurred during those calls"].)

Wells Fargo further argues this cause of action "failed to allege facts constituting 'unfair or unconscionable' debt collection attempts by Wells Fargo" because it "had a contractual right to pursue foreclosure to address the payment default, and Wells Fargo was under no obligation to remedy the fraud of third-party West H&A LLC." Despite Miyahara's argument that Wells Fargo's "actions were unfair and unconscionable when it pursued foreclosure when it knew that there was a false lien on the property that prevented her refinance," we agree with Wells Fargo the viability of this cause of action hinges on whether it could pursue foreclosure under the deed of trust without demanding full repayment, and what specific provision of the Fair Debt Collections Practice Act (incorporated into the Rosenthal Act) has been violated. (See 15 U.S.C. § 1692f; Civ. Code, §§ 1788.10-1788.16.) But, as noted above, at the very least Miyahara is entitled to leave to amend to address these deficiencies. (See *Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428 ["The policy favoring amendment is so strong that it is a rare case in which denial of leave to amend can be justified."].)

26

### 3. *Violation of Business and Professions Code Section 17200*

Wells Fargo argues the third cause of action lacks merit because it is based on the other defective causes of action, and further contends Miyahara lacks standing because she has not suffered "an injury in fact." As pled, the section 17200 cause of action is derivative of the previous causes of action. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails"].) Thus, to the extent the first two causes of action were insufficiently pled, the UCL cause of action was also insufficiently pled. But, for the same reasons as above, leave to amend is proper. Miyahara's allegations she suffered economic injury by having to pay attorney fees and costs of suit to prevent the sale of her home, as well as late fees and appraisal fees, and the destruction of her credit requiring her to pay more in interest is sufficient under section 17200 to allege standing and whether she would be entitled to restitution. (Bus. & Prof. Code, § 17204 ["Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"]; see *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 330, fn. 15 ["Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of this loss is not required. It suffices that a plaintiff can allege an "'identifiable trifle'" [citation] of economic injury."].)

27

### 4. *The Homeowner Bill of Rights*

Miyahara alleged Wells Fargo violated the Homeowner Bill of Rights (Civ. Code, § 2924.17) "by failing to review competent and reliable evidence to substantiate its rights to collect amounts in default while the fraudulent assignment was recorded and it was, arguably, not the owner of the loan or entitled to collect payments during the time period where the assignment was recorded." As Wells Fargo notes, *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 162 held that "Section[ ] 2924.17 . . . do[es] not create a right to litigate, preforeclosure, whether the foreclosing party's conclusion that it had the right to foreclose was correct." Miyahara did not address in the trial court or on appeal how she would amend her complaint to state a valid cause of action for violation of the Homeowner Bill of Rights. (See *Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173 ["The plaintiff has the burden of proving the possibility of cure by amendment"]; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived"].) Accordingly, Miyahara does not have leave to amend the fourth cause of action.

## DISPOSITION

The judgment is reversed. The order sustaining the demurrer without leave to amend is affirmed in part and reversed in part. The order is affirmed as to the cause of action for violation of the Homeowner Bill of Rights (fourth cause of

28

action).  We reverse the order sustaining the demurrer and dismissing on the basis of judicial estoppel without leave to amend.  The trial court is directed to enter a new order sustaining the demurrer as to judicial estoppel, and the causes of action for breach of the implied covenant of good faith and fair dealing (first cause of action), violation of the Rosenthal Act (second cause of action) and violations of Business and Professions Code section 17200 (third cause of action) with leave to amend.  The parties are to bear their own costs on appeal.


MARTINEZ, J.

We concur:


SEGAL, Acting P. J.


FEUER, J.


29